**Thomas W. HILL, Plaintiff–Appellee,**

v.

**DEPARTMENT OF AIR FORCE, Defendant–Appellant,**

and

**Paul S. Britt; Paul J. Vallerie, Defendants.**

No. 86–2418.

United States Court of Appeals, Tenth Circuit.

March 30, 1988.

Rehearing Denied April 11, 1988.

Thomas W. Hill, pro se.

Richard K. Willard, Asst. Atty. Gen., William L. Lutz, U.S. Atty., Barbara L. Herwig and Howard S. Scher, Attys., Appellate Staff Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Before ANDERSON, BARRETT, Circuit Judges, and THOMPSON,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This is an appeal from an order of the district court granting Thomas W. Hill's motion for a preliminary injunction and requiring the defendant Department of the Air Force to reinstate Hill's security clearance, remove the "Z code" relating to Hill's security clearance in its computer files, program the computer files to indicate Hill is entitled to access to classified materials consistent with his previous security clearance, and notify all inquiring agencies of the reinstatement of Hill's security clearance without giving any derogatory information.[1]

On appeal, the Air Force argues that the district court erred in ordering the Air Force to restore Hill's security clearance and in prohibiting the Air Force from releasing information pertaining to Hill's suitability for a security clearance. Specifically, the Air Force maintains that (1) courts are not permitted to second-guess the merits or wisdom of military or national security decisions; (2) the only proper basis for review of a military or national security decision is to determine whether pertinent procedural regulations were followed; (3) at most, the action should have been remanded to the Air Force for redetermination; and (4) there is no occasion to order reinstatement of a security clearance when an employee's removal from employment has not been set aside. We agree with the Air Force on every point.

At the request of this court the district court has filed a supplemental opinion explaining the basis for its jurisdiction, and reaffirming its earlier determination that it has jurisdiction in the matter.

The district court has reasoned that jurisdiction was conferred upon it under 28 U.S.C. § 1331 on the theory that "agency actions in suspending [Hill's] access to classified material were illegal and resulted in deprivation of [Hill's] fifth amendment rights to due process and equal protection of the laws." The court found that Hill had both constitutional liberty and property interests in his security clearance, and "had a legitimate expectation of entitlement to access to classified information unless and until his access was terminated with proper procedures based upon the reasonable find-

---

* Hon. Ralph G. Thompson, Chief Judge, U.S. District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.1.2. The cause is therefore ordered submitted without oral argument.

ing that he was a security risk." The court further found that Hill's liberty interests were infringed when his clearance was suspended because dissemination of Hill's suspended status impugned Hill's standing and reputation, and limited Hill's ability to secure employment. Finally, the district court ruled that Hill's superior maliciously caused the suspension of Hill's clearance out of personal animosity, and "[s]uch conduct would not be rationally related to legitimate government purposes and implicates a violation of equal protection."

On February 23, 1988, the United States Supreme Court issued its opinion in *Dep't. of the Navy v. Egan,* — U.S. ——, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). That opinion (which we awaited for whatever guidance it might afford in our disposition of this case), directly addresses only the narrow question of "whether the Merit Systems Protection Board (Board) has authority by statute to review the substance of an underlying decision to deny *or revoke* a security clearance in the course of reviewing an adverse action." *Id.* at 820 (emphasis added). Nevertheless, the case removes any doubt regarding the authority of federal courts to review the merits of the grant or denial of security clearances. Under any circumstance which might be germane to this case, there is no such authority. As is indicated by the Supreme Court's statement of the question in that case, *Egan* extends to the merits of suspension, modification or revocation of a previously granted security clearance, since the underlying rationale applies with equal logic to revocation as it does to an initial grant of authority. These matters are a "sensitive and inherently discretionary judgment call ... committed by law to the appropriate agency of the Executive Branch." *Id.* at 824. The court elaborated as follows:

The President, after all, is the "Commander in Chief of the Army and Navy of the United States." U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant. *See Cafeteria Workers v. McElroy,* 367 U.S. 886, 890 [81 S.Ct. 1743, 1746, 6 L.Ed.2d 1230] (1961). This Court has recognized the Government's "compelling interest" in withholding national security information from unauthorized persons in the course of executive business. *Snepp v. United States,* 444 U.S. 507, 509, n. 3 [100 S.Ct. 763, 766, n. 3, 62 L.Ed.2d 704] (1980). See also *United States v. Robel,* 389 U.S. 258, 267 [88 S.Ct. 419, 425, 19 L.Ed.2d 508] (1967); *United States v. Reynolds,* 345 U.S. 1, 10 [73 S.Ct. 528, 533, 97 L.Ed. 727] (1953); *Totten v. United States,* 92 U.S. [2 Otto] 105, 106 [23 L.Ed. 605] (1875). The authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief.

\* \* \* \* \* \*

*It should be obvious that no one has a "right" to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official. The general standard is that a clearance may be granted only when "clearly consistent with the interests of the national security." See, e.g.,* Exec. Order No. 10450, §§ 2 and 7, 3 CFR 936, 938 (1949–1953 Comp.); 10 CFR § 710.10(a) (1987) (Department of Energy); 32 CFR § 156.3(a) (1986) (Department of Defense). A clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. It may be based, to be sure, upon past or present conduct, but it also may be based upon concerns completely unrelated to conduct, such as having close relatives residing in a country hostile to the United States. "[T]o be denied [clearance] on unspecified grounds in no way implies

disloyalty or any other repugnant characteristic." *Molerio v. FBI*, 242 U.S.App. D.C. 137, 146, 749 F.2d 815, 824 (1984). The attempt to define not only the individual's future actions, but those of outside and unknown influences renders the "grant or denial of security clearances ... an inexact science at best." *Adams v. Laird*, 136 U.S.App.D.C. 388, 397, 420 F.2d 230, 239 (1969), *cert. denied*, 397 U.S. 1039, 90 S.Ct. 1360, 25 L.Ed.2d 650 (1970).

Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information. *For "reasons ... too obvious to call for enlarged discussion," CIA v. Sims*, 471 U.S. 159, 170 [105 S.Ct. 1881, 1888, 85 L.Ed.2d 173] (1985), *the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.* Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk. The Court accordingly has acknowledged that with respect to employees in sensitive positions "there is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information." *Cole v. Young*, 351 U.S. 536, 546 [76 S.Ct. 861, 868, 100 L.Ed. 1396] (1956). As noted above, this must be a judgment call. The Court also has recognized "the generally accepted view that foreign policy was the province and responsibility of the Executive." *Haig v. Agee*, 453 U.S. 280, 293–294 [101 S.Ct. 2766, 2775, 69 L.Ed.2d 640] (1981). "As to these areas of Art. II duties the courts have tradi-

tionally shown the utmost deference to Presidential responsibilities." *United States v. Nixon*, 418 U.S. 683, 710 [94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039] (1974). *Thus, unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.* See, *e.g., Orloff v. Willoughby*, 345 U.S. 83, 93–94 [73 S.Ct. 534, 540, 97 L.Ed. 842] (1955), *Burns v. Wilson*, 346 U.S. 137, 142, 144 [73 S.Ct. 1045, 1049, 1050, 97 L.Ed. 1508] (1953), *Gilligan v. Morgan*, 413 U.S. 1, 10 [93 S.Ct. 2440, 2446, 37 L.Ed.2d 407] (1973), *Schlesinger v. Councilman*, 420 U.S. 738, 757–758 [95 S.Ct. 1300, 1313, 43 L.Ed.2d 591] (1975), *Chappel v. Wallace*, 462 U.S. 296 [103 S.Ct. 2362, 76 L.Ed.2d 586] (1983).

*Id.* at 824–26 (emphasis added).

There are strong parallels between this case and *Egan*. Both Hill and Egan lost their civilian jobs with agencies of the military under circumstances related to a security clearance. Egan lost his job because he was not granted a clearance. Hill lost his job because of the same misconduct (conversion of telephone services, among other actions) which was cited as the reason for the suspension of his clearance. And, although Hill's employment was not immediately affected by his loss of access to secret information, we assume it would have been affected by ultimate revocation of his clearance.

Both Hill and Egan contested their loss of employment, and received full due process under applicable statutes and regulations: notice, hearing before the Merit Systems Protection Board ("MSPB"), confrontation, and rights of appeal. In that process Hill was able to present affirmative defenses, and defenses on the merits, without success. Egan's loss of employment due to his inability to get a clearance was eventually upheld on appeal. Hill's loss of employment was also upheld on appeal.[2] The fact that Hill lost his job because of misconduct presents a much stronger case

---

2. *Hill v. Dep't. of the Air Force*, 818 F.2d 874 (Fed.Cir.1987), *reh'g denied*, March 9, 1987.

for the terminating agency than the fact situation in *Egan.*

In *Egan* the MSPB was held to have no authority to review "the substance of an underlying decision to deny *or revoke* a security clearance." *Id.* at 820 (emphasis added). Here, the MSPB refused to hear Hill's arguments with respect to Air Force Action as to his security clearance because it was his misconduct, not the suspension of his clearance, that cost him his job. But that does not alter the controlling proposition. Under *Egan,* if Hill's clearance had been revoked, and his job lost as a result, neither the MSPB nor the courts would have had statutory authority to conduct the very type of review Hill urges here, and which the district court accorded him—a review which examined the merits and motives of Air Force decisions relating to Hill's clearance, and the nexus between those decisions and national security interests. If the merits underlying a revocation cannot be examined, there are even stronger reasons why the merits underlying an interim action such as a suspension cannot be examined. We have no doubt that if Hill's arguments on the suspension of his security clearance had been before the MSPB in the context of hearings on his job loss, or otherwise, the MSPB would have been prohibited under *Egan* from doing what the district court did here. The MSPB, and reviewing courts, would have been limited to the fact of suspension and whether suspension had occurred for a facially valid reason. The substance of the underlying decision would be beyond review.

■ Of course, the holding in *Egan* deals with statutory powers of review. The essential question before us is whether the constitutional allegations advanced below form an independent jurisdictional basis by which the district court could proceed to examine and pass on the merits of the Air Force decision to suspend Hill's security clearance. Prior to examining that question, we observe at the outset that if the statutory constraints imposed in *Egan* can be bypassed simply by invoking alleged constitutional rights, it makes the authority of *Egan* hardly worth the effort.

The constitutional rights invoked in this case are those of due process and equal protection. As the district court correctly perceived, Fifth Amendment due process is not implicated here unless Hill had a constitutionally cognizable property or liberty interest in his security clearance under the circumstances of this case. *See Weatherford v. Dole,* 763 F.2d 392, 393 (10th Cir. 1985); *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982).

■ We hold that Hill did not have a constitutional property or liberty interest in his security clearance. The same reasoning which underpins *Egan* supports that conclusion. The Executive Branch has constitutional responsibility to classify and control access to information bearing on national security. A security clearance is merely temporary permission by the Executive for access to national secrets. It flows from a discretionary exercise of judgment by the Executive as to the suitability of the recipient for such access, consistent with the interests of national security. The notion of an individual property right in access to the nation's secrets—by definition a limitation on Executive discretion—is utterly inconsistent with those principles. Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Hill emphasizes the existence of procedural rules which have been developed by the Department of Defense and the various military agencies relating to the suspension and potential revocation of an existing clearance. Dept. of Defense Regulation 5200.2R/Air Force Regulation (AFR) 205–32 (Nov. 26, 1982). Those procedures are not the type of "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972). *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532,

538–41, 105 S.Ct. 1487, 1491–92, 84 L.Ed. 2d 494 (1985); *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). The procedures are administrative devices which are indeed intended to promote fairness and safeguard the rights of individual employees, but are not intended thereby to diminish Executive authority rooted in Executive responsibility. If the courts attempt to attach constitutional rights to security clearances because rules have been promulgated to better administer employee relations, it will provide a disincentive for government agencies "to continue improving the mechanisms by which an aggrieved employee can protect his rights." *Bush v. Lucas,* 647 F.2d 573, 577 (5th Cir. Unit B June 1981) *aff'd,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). *See also Broadway v. Block,* 694 F.2d 979 (5th Cir.1982).

■ The foregoing discussion applies as well to the question of a liberty interest where Hill is concerned, with an additional explanation. The district court found that suspending Hill's clearance, creating a file showing the suspension, and disseminating such information, impugned Hill's standing and reputation and limited his ability to secure employment. *Egan* compels a different view: "A clearance does not equate with passing judgment upon an individual's character." *Egan* at 824. The same is true of a suspension. Furthermore, potential dissemination of the underlying reasons for the suspension, thus possibly damaging Hill's employability, was overshadowed in any event by the fact of and reasons for Hill's discharge. Full due process and a name-clearing opportunity were provided Hill in that regard. The reasons for both suspension and discharge were the same as was, presumably, their impact, if any, on Hill's ability to secure employment based on his character and reputation. The Air Force could not, and should not, be prohibited from communicating to prospective employers who do work for the government the facts underlying Hill's discharge. Finally, the suspension itself neither deprived Hill of his employment, since he remained employed until removed for misconduct, nor "foreclosed" other employ-

ment opportunities. *See Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1971). Upon seeking employment in the private sector which requires a security clearance Hill is free to apply to the Defense Industrial Security Clearance Office for a clearance, and to receive a full hearing if denial of a clearance is proposed. In short, there was nothing in the suspension itself which implicated a liberty interest.

Constitutional questions aside, however, courts do have the power to compel agencies to follow their own regulations. *See e.g., Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 892–93, 81 S.Ct. 1743, 1747, 6 L.Ed.2d 1230 (1960); *Watkins v. United States Army,* 721 F.2d 687, 690 (9th Cir.1983). The Air Force acknowledges that point. Supplemental Brief for the Appellants on Jurisdiction at 5 ("[W]e do not dispute that the district court had jurisdiction to review whether the required procedures were followed....")

■ But the district court made no finding that the Air Force violated any particular procedure; and even if such a finding had been made the remedy would have been a remand for the purpose of compliance with applicable procedures, not an order requiring reinstatement of Hill's clearance. *See generally Gayer v. Schlesinger,* 490 F.2d 740, 752 (D.C.Cir.1973).

■ Hill's main complaint is that the Air Force refused to continue the process of adjudicating his security status after his employment was terminated. That refusal has left the suspension of his clearance, with a "Z" code, intact and in limbo. He contends he is still entitled to a hearing with respect to the reasons asserted for the suspension of his clearance, and whether he can fairly be labeled a security risk after almost twenty years of loyal service. The Air Force responds that it has neither need nor authority to apply an employee-related adjudication process to someone who is no longer an employee. Hill calls that response a "catch–22".

As a general proposition, the Air Force makes a valid point. The security clearance was issued by the Air Force solely to facilitate on-the-job performance by one of its employees, not to create an independent, portable right for the benefit of a former employee. However, it is unnecessary for us to decide whether the Air Force can be ordered to complete its adjudication of a former employee's clearance, because we view Hill's removal for misconduct as a material intervening, and dispositive, factor. There is no way to return Hill to the status quo ante. Hill's fully adjudicated discharge resulted in a finding by the MSPB of misconduct and that Hill's "misconduct related to his integrity and trustworthiness." MSPB Mem. Op. Nov. 6, 1985 at 24. The findings of the MSPB were upheld on appeal and are conclusive and binding on us, Hill, and the Air Force. Those facts on their face would make a remand regarding a top secret clearance a useless exercise. At the very least the factual basis upon which adjudication would proceed would be so substantially altered as to present an entirely different case. For instance, Hill would not be entitled to re-litigate the issue of his conversion of telephone services.

Furthermore, it is a fallacy to contend that no hearing is available. Hill is entitled to apply anew for a clearance from the appropriate agency as an employee of a government contractor. When investigation of that application turns up the special file created by the Air Force, Hill can make his explanations and avail himself of the detailed procedures for notice and a hearing permitted with respect to any proposed adverse action. Dept. of Defense Directive, 5220.6, August 12, 1985, (codified at 32 C.F.R. § 155 (1987)). Under those procedures Hill would receive the very same type of hearing, and with respect to the same matters and contentions, that he complains he was not accorded by the Air Force. We understand that since his termination by the Air Force Hill has obtained other employment and has been granted a top secret security clearance. If that clearance is affected by the dissolution of the preliminary injunction issued in this case, then Hill still would be entitled to notice and a hearing of the same type and quality just mentioned.

Since the district court supported its finding of jurisdiction under the Equal Protection Clause and the Administrative Procedure Act, 5 U.S.C. § 702, on the same reasoning which we have already addressed and rejected in the foregoing discussion, it is unnecessary to pursue those subjects. We hold that no jurisdiction was conferred on those grounds.

To summarize, the district court improperly based its jurisdiction upon constitutional grounds and, in that connection, evaluated the motives and the merits of the agency's actions with respect to Hill's security clearance. The Supreme Court has now made clear, in *Egan*, that the courts are without power to conduct such a review under circumstances which would include those presented in this case. The district court lacked jurisdiction on the grounds enumerated in its decision. The court did have jurisdiction in general with respect to whether procedures were violated, but had no authority to order a reinstatement of Hill's clearance, or to grant the additional relief contained in the preliminary injunction. Furthermore, we hold that, under the circumstances of this case, a further review of the procedures followed in suspending Hill's clearance, and of the agency's refusal to continue to adjudicate the matter following Hill's removal for misconduct, is unnecessary and inappropriate. The case is remanded to the district court with instructions to dissolve the preliminary injunction issued in this case. Upon proper motion by the Air Force the district court shall dismiss with prejudice the fourth cause of action contained in Hill's second amended complaint, dealing with his security clearance and alleged actions or omissions by the Department of the Air Force with respect thereto.