**Basharat A. JAMIL, Plaintiff–Appellant,**

**and**

**Razia Jamil, his wife, Plaintiff,**

**v.**

**SECRETARY, DEPARTMENT OF DEFENSE, Defense Mapping Agency Hydrographic/Topographic Center, Defendants–Appellees.**

**No. 89–1511.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1990.

Decided Aug. 3, 1990.

Anthony John DiSalvo Schmidt, Schmidt, Roth, Brennan & Carroccio, Rockville, Md., for plaintiff-appellant.

David Paul King, Office of the U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., Thomas F. O'Neil, III, Asst. U.S. Atty., Baltimore, Md., Thomas Fieberger, Asst. General Counsel, Defense Mapping Agency, Washington, D.C., on brief), for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

The Defense Mapping Agency (DMA) hired the appellant, Basharat Jamil, as a GS–11 mathematician in 1978. He obtained a "secret" security clearance shortly thereafter. In 1980 and 1983, his supervisors

requested an increase in the level of his security clearance, but those requests were denied because Jamil, who is Asian–American, had relatives living abroad and was in default in connection with at least one student loan. During his employment, Jamil became an open critic of the Technical Director and argued that the DMA was wasting millions of dollars of the taxpayers' money. Jamil contends that because of his criticisms and general "whistleblowing" activities his immediate supervisor, Judy Davenport, and the Technical Director conspired to force him out of the DMA. He alleges that they assigned him menial jobs to force him to quit. When that failed, he contends that they decided to get his security clearance revoked as the safest way to get rid of him.[1]

The DMA revoked Jamil's security clearance on July 16, 1985, for "financial irresponsibility." Subsequently, he was removed on October 15, 1985, from federal service for failing to have a security clearance. He appealed to the Merit Systems Protection Review Board (MSPRB), but the Board upheld the agency's removal on November 13, 1989. 42 M.S.P.R. 327. Jamil appealed the Board's decision to the Federal Circuit. That appeal was still pending when this case was orally argued before us, but was dismissed by the Federal Circuit on March 29, 1990, for failure of Jamil to pay the docketing fee of that court.

On January 31, 1986, prior to the ruling by the MSPRB, Jamil filed the complaint in this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., in the United States District Court for the District of Maryland.[2] He alleges that his supervisors and the Department of Defense discriminatorily revoked his security clearance and then removed him for failure to meet a condition of his employment—eligibility for a security clearance. He also alleges that the defendants failed to provide him with the procedural due process required by DMA's regulations and the

United States Constitution. The district court granted summary judgment for the defendant on the basis of the Supreme Court's decision in *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). The district judge held that after *Egan* the only issues open to review are whether (1) Jamil's position required a security clearance; (2) in fact that clearance was denied; and (3) transfer to a nonsensitive position was feasible. The court found that the first two elements were not in dispute and that no transfer was necessary unless a prior policy requiring transfer existed, which in this case it did not. Jamil appeals that decision to this court. We affirm.

## I.

■ Before turning to the claims presented by Jamil, we briefly review the Supreme Court's decision in *Egan*. Egan was denied a security clearance, and therefore a job, on the basis of his criminal history. Egan sought review of the merits of the denial from the MSPRB. The MSPRB held that the agency must specify the precise criteria used in its security clearance decisions and show that those criteria are rationally related to national security. In addition, the MSPRB determined that the agency is then required to prove the facts supporting denial in a particular case by a preponderance of the evidence. On review, the Supreme Court held that the MSPRB could not review the merits of the security clearance denial. Implicitly, that holding certainly also indicates that no court which is given authority to hear appeals from the MSPRB can reach such issues. Rather, in *Egan*, the Supreme Court indicated that the determination by an agency whether or not to grant an individual access to secret information lies inherently within the discretion of that agency and that therefore it is virtually impossible for the MSPRB or a court to review the

---

1. Jamil's supervisors did not have authority to revoke his security clearance, but Jamil alleges that they were able to persuade the officials in charge of reviewing his clearance to revoke his clearance improperly.

2. The MSPRB has jurisdiction to hear the discrimination claims, but Jamil had a right to file a separate Title VII action under 5 U.S.C. § 7702(e)(1)(B).

exercise of such discretion by application of objective criteria. Thus, it is reasonable that " 'an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.' " 484 U.S. at 529, 108 S.Ct. at 825 (quoting *Cole v. Young*, 351 U.S. 536, 546, 76 S.Ct. 861, 868, 100 L.Ed. 1396 (1956)). The discretionary nature of the decision to withhold a security clearance combined with the constitutional delegation of the obligation to protect national security to the Executive Branch is such that neither the MSPRB nor a court of appeals, in review of the MSPRB, can be permitted "to intrude upon the authority of the Executive in military and national security affairs" absent specific authorization from Congress. 484 U.S. at 527–30, 108 S.Ct. at 823–25.

In *Egan*, writing for the majority, Justice Blackmun concluded that Congress has authorized the MSPRB to review only certain "adverse actions" which do not include the denial or revocation of a security clearance. 484 U.S. at 530, 108 S.Ct. at 825. Thus, while the MSPRB could review whether Egan was dismissed for cause, that review was limited to determining whether (1) Egan's security clearance had in fact been denied, (2) the security clearance was a requirement for his job and thus its denial was an appropriate cause for dismissal, and (3) a transfer to a non-sensitive position was feasible. *Id.*

In this appeal, Jamil concedes that the MSPRB and the courts cannot review the merits of the denial of his security clearance. Thus Jamil agrees that he may not, for example, argue that having relatives living abroad does not constitute enough of a risk to warrant revocation of a security clearance. Nevertheless, he insists that he should be able to challenge the revocation of his security clearance and his subsequent dismissal on the grounds that defendants violated other substantive laws and/or failed to follow proper procedures. In that regard, Jamil presents three contentions. First, he claims that the denial of his clearance was merely a pretext for illegal discrimination based on his national origin and his "whistleblowing" activities. Second, he asserts that the defendants failed to follow the procedures required by their own regulations. Third, he takes the position that the denial and the dismissal deprived him of certain of his constitutional rights. In *Egan* the plaintiff presented a direct challenge to the merits of the denial of his security clearance. However, he did not assert any of the three specific challenges made by Jamil. In this appeal, we address each of those contentions in turn.

## II.

■ Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to discriminate against a government employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16. While Jamil is less than precise about the basis for his Title VII claim, it appears that he alleges discrimination on the basis of his national origin. We conclude that summary judgment in favor of the defendants on this claim was proper.

To begin with, Jamil did not proffer sufficient evidence to create a genuine issue of material fact to survive summary judgment. A Title VII claim must be analyzed in three stages. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must first make out a *prima facie* case of discrimination. Establishing a *prima facie* case shifts a burden of production to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. If the defendant produces evidence of such a reason, then the plaintiff must show that the reason presented by the defendant is merely a pretext for discrimination. The plaintiff retains the ultimate burden of persuasion throughout the process. Assuming, without deciding, that Jamil has presented a *prima facie* case for discrimination on the

basis of national origin, the defendants have produced a legitimate reason for his dismissal, namely that he no longer held the security clearance required for his job.

In addition, we note that nothing in the record indicates that the defendants sought to discriminate against Jamil on the basis of his national origin. In fact, the one person who Jamil claims received preferential treatment, Ms. Davenport, was also a member of the same protected minority to which Jamil belongs, namely Asian–American. The only evidence in the record of discrimination is found in an affidavit from a former co-worker of Jamil who claims to have overheard the Technical Director and Ms. Davenport conspiring to have his security clearance revoked to "discriminate against him" and to retaliate for his whistleblowing. The affidavit does not indicate whether the alleged "discrimination" was based on national origin. Moreover, the affidavit addresses the intent of Jamil's supervisors, not of the persons who actually revoked his security clearance. Jamil asserts without any support that his supervisors must have persuaded those in charge of reviewing his security clearance to act improperly. That assertion, without more, does not raise a genuine issue of material fact.

In addition to contending that defendants discriminated against him because of his national origin, Jamil also asserts that the defendants retaliated against him for blowing the whistle on their mismanagement and "cronyism." In support of that claim, Jamil relies primarily upon the affidavit from his former co-worker. As discussed above, the affidavit addresses the intent of his supervisors, not of the persons who revoked his security clearance, and nothing in the record indicates that his supervisors

persuaded anyone else to engage in improper retaliation.

■ Further, even if Jamil's allegations of retaliation are true, the alleged facts do not constitute an actionable claim under Title VII. "To state a claim of retaliation under Title VII, plaintiff must at least allege that the [defendant] retaliated against her on account of her whistleblowing *and* that her whistleblowing was in opposition to conduct or practices violative of Title VII." *Theard v. United States Army,* 653 F.Supp. 536, 545 (M.D.N.C.1987) (emphasis added) (footnote omitted). *See also Crowley v. Prince George's County, Md.,* 890 F.2d 683, 687 (4th Cir.1989) ("Section 2000e–3 forbids discrimination against an employee 'because he has opposed any practice *made an unlawful employment practice* by this subchapter.' ") (emphasis added in *Crowley*). Title VII is not a general "bad acts" statute; it only addresses discrimination on the basis of race, sex, religion, and national origin, not discrimination for whistleblowing. *See Holder v. City of Raleigh,* 867 F.2d 823, 827–28 (4th Cir.1989) (distinguishing an unfair hiring decision from one actionable under Title VII).[3] In this case we need not and do not reach the question of whether *Egan* precludes courts from reviewing security clearance decisions for pretext in the context of the third stage of a Title VII claim of discrimination, *see Egan,* 484 U.S. at 530–33, 108 S.Ct. at 825–27; *see also Peterson v. Department of Navy,* 687 F.Supp. 713, 715 (D.N.H.1988) (holding that *Egan* barred the review of the denial of a security clearance for discrimination because it would "require the Court to undertake a substantive review of the validity of the agency's reasons for denying the clearance.").[4] If Jamil had produced evidence of pretext sufficient to create a genuine issue of fact, and to survive summary judg-

---

3. That does not mean that an agency may retaliate against a whistleblowing employee. In fact, Congress has provided specific protection against such retaliation. *See, e.g.,* 5 U.S.C. §§ 1201–1209. The Federal Circuit might perhaps have addressed that issue if it had reached the merits of Jamil's appeal from the MSPRB decision. Herein, we hold only that *Title VII*

does not provide a remedy for that type of retaliation.

4. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (regarding the opportunity of a Title VII plaintiff to show pretext by direct evidence of a discriminatory motive or by proving that the purported motive advanced by the defendants lacks credence).

ment with respect thereto, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), then the court, under the third stage of the *McDonnell–Douglas* inquiry, would have to consider whether the officials who actually revoked Jamil's security clearance conspired to discriminate against him. Whether we would be permitted so to do, in the light of *Egan*, is a question which we need not decide since, as discussed *supra* at p. 1207, Jamil has not met his burden within the third stage of *McDonnell–Douglas* to produce some evidence of pretext. As to any substantive constitutional claim of discrimination which Jamil may be stating in this appeal, see the discussion in Part IV., *infra*.

### III.

██ While this court may lack the power to review the merits of the decision to revoke Jamil's security clearance, it still possesses the authority to require an agency like the DMA to follow its own regulations in making a security clearance determination and in dismissing an employee. *See Hill v. Department of Air Force*, 844 F.2d 1407, 1412 (10th Cir.1988) ("courts do have the power to compel agencies to follow their own regulations"). *See also Egan*, 484 U.S. at 530, 108 S.Ct. at 825 ("An employee who is removed for 'cause' under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute."). An agency like the DMA may change its regulations, but, until it does so, an affected employee may require the agency to follow the procedures which it itself has promulgated.

The defendants made two decisions regarding Jamil: a decision to revoke his security clearance and a second decision to terminate his employment. If the defendants failed to follow established procedures in making either decision, Jamil has

failed to point to the rule or the regulation which he alleges has been violated. The defendants provided him with notice that they intended to revoke his security clearance for "financial irresponsibility." Jamil complains that that notice was inadequate, but has not referred to any rule or regulation granting him the right to any notice at all, much less more substantial notice than he received.[5]

Once Jamil's clearance was revoked, the agency terminated his employment for cause under 5 U.S.C. § 7513. That statute required the defendants to give Jamil notice of their intention to remove him from government service, to give him an opportunity to respond orally or in writing, to allow him to have an attorney, and to give him a written decision with the specific reasons for the action. At that stage, the agency did not have to justify the revocation of the security clearance. It only had to explain that the lack of a clearance was the basis for its decision to fire him. Jamil has not suggested that the DMA did not discharge that statutory obligation.

In some cases, agency regulations may impose an obligation on an agency to attempt to find an alternative, nonsensitive position for an employee whose security clearance has been revoked. It is perhaps arguable that some of the language in *Egan* suggests that an agency may have such an obligation regardless of its own regulations. However, in *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580 (Fed.Cir.1989), that court interpreted *Egan* to mean that the MSPRB may review the "feasibility of a transfer to a nonsensitive position if that right is available from some other source, such as a statute or regulation." We agree with the Federal Circuit that the Supreme Court in *Egan* did not intend to impose on an agency the obligation, independent of statute or regulation, to transfer employees who lose their security clearance. In this case, no inde-

---

**5.** As discussed below, Jamil did not have a property or liberty interest in his security clearance, so he had no constitutional rights to procedural due process in connection with its revocation. Therefore, he must ground any claims to procedural protection in statutes or regulations.

pendent source for a right to a transfer exists, so the defendants were under no obligation to attempt to transfer Jamil to a nonsensitive position.

Without a more explicit showing from the plaintiff that the defendants violated any statute or any DMA rule or regulation, defendants are entitled to the district court's award of summary judgment as to plaintiff's claim of violation of any procedural requirements. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## IV.

■ Jamil also asserts that the defendants have violated his constitutional rights by depriving him of due process and equal protection. In order to establish a due process violation, Jamil must show that he had a property or liberty interest at stake. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985). However, because of the inherently discretionary judgment required in the decisionmaking process, "no one has a 'right' to a security clearance" and revocation does not constitute an adjudication of one's character. *Egan*, 484 U.S. at 528, 108 S.Ct. at 824. It follows that the revocation does not infringe upon one's property or liberty interests. *See Doe v. Cheney*, 885 F.2d 898, 909–10 (D.C.Cir.1989) (no property or liberty interests in denial of access to sensitive information); *Hill v. Department of Air Force*, 844 F.2d 1407, 1412 (10th Cir.1988) (employee had no property or liberty inter-

est in a security clearance). Accordingly, Jamil did not have a property interest in his security clearance.

Jamil did have a property interest in his continued employment, but the defendants provided him with due process with regard thereto during the termination procedure. Prior to his dismissal, the defendants gave Jamil notice and an opportunity to respond. Jamil protests the propriety of the revocation of his security clearance, but his dispute over the merits of that decision does not render the procedure inadequate.

If Jamil had been dismissed because of his national origin, then, despite *Egan*'s admonition restraining court review, it is arguable that he might have a valid claim of denial of his constitutional rights to equal protection and to be free of discrimination because of national origin. Whether, however, review of such alleged denial of constitutional rights is reachable by a court in the light of *Egan* presents a difficult question that we do not need to reach in this appeal.[6] That is because, as discussed above, nothing in the record, other than Jamil's conclusory assertion, indicates that the defendants acted from an improper motivation based on national origin. Thus, summary judgment was in any event proper with respect to Jamil's constitutional claims.

AFFIRMED.

6. *See Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (Before a court concludes that Congress has intended to preclude judicial review of a constitutional claim, that intent must be clear "in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.") (citations omitted).