# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 22, 2017     Decided November 14, 2017

No. 16-5250

KAISER GILL,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE AND FEDERAL
BUREAU OF INVESTIGATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00824)

*Faisal Gill* argued the cause and filed the briefs for
appellant.

*Charles W. Scarborough*, Attorney, U.S. Department of
Justice, argued the cause for appellees. With him on the brief
were *H. Thomas Byron III* and *Jaynie Lilley*, Attorneys. *R.
Craig Lawrence*, Assistant U.S. Attorney, entered an
appearance.

Before: ROGERS and TATEL, *Circuit Judges*, and
SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* TATEL.

PER CURIAM: The Federal Bureau of Investigation revoked appellant Kaiser Gill's security clearance after he, while employed as a special agent, conducted unauthorized searches of a Bureau database. Gill filed suit, alleging that the revocation of his security clearance violated the equal protection and due process clauses of the Constitution, as well as the Foreign Intelligence Surveillance Act. The district court concluded that Gill's claims failed or were otherwise barred and dismissed the case. Although following a slightly different path, we reach the same destination and affirm.

## I.

A decorated veteran and Pakistani immigrant, Kaiser Gill worked for the Federal Bureau of Investigation (FBI) as a special agent until 2006, when the Bureau revoked his security clearance after he conducted unauthorized searches of its Automated Case Support system. Gill sought review of this decision with the Department of Justice's Access Review Committee (ARC), where he admitted his misconduct and, claiming that the "risk of him engaging in similar misconduct . . . was miniscule," asked that he be given "another opportunity to perform his duties as an FBI agent." Memorandum from Mari Barr Santangelo, ARC Chair, to Alex J. Turner, Assistant Director, FBI Security Division, at 4 (Apr. 2, 2014) ("ARC Opinion"). Although the ARC recognized Gill's remorse, it emphasized that his "admitted misconduct in accessing sensitive information for personal reasons . . . raise[d] straightforward concerns regarding his ability to safeguard classified information." *Id.* Citing applicable guidelines requiring that any doubt be resolved in favor of national security, the ARC affirmed the FBI's revocation of Gill's security clearance.

Gill filed a six-count complaint against the FBI and Department of Justice in the U.S. District Court for the District of Columbia. Gill contended that the FBI violated the Foreign Intelligence Surveillance Act (FISA) by introducing evidence in the ARC hearings that it obtained through undisclosed FISA-authorized surveillance (Count Three). *See* 50 U.S.C. § 1806(c) (requiring disclosure of "any information obtained . . . pursuant to the authority of this subchapter" when used as evidence in certain proceedings). Gill also alleged that his due process rights were infringed by the FISA violation (Count Two), by the fact that it took the ARC five years to issue its decision (Count Six), and by the ARC's treatment in that decision of his naturalized family members as "foreign influence[s]" (Count Four). Compl. ¶ 78. Finally, Gill contended that the government denied him equal protection both by treating his family members as foreign influences (Count Five) and by treating him, a Muslim, differently from non-Muslims guilty of similar misconduct (Count One).

The government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting several defenses, including that under the Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), federal courts lack authority to review challenges to agency revocations of security clearances. Finding Gill's various claims either meritless or barred, the district court granted the government's motion and dismissed the complaint. Gill appeals, reiterating the arguments he advanced in the district court. Our review is de novo. *American National Insurance Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (applying de novo standard to district court dismissal under Rule 12(b)(1)); *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007) (applying de novo standard to district court dismissal under Rule 12(b)(6)).

## II.

We begin with Gill's claim that the FBI violated FISA. Under that statute, the Attorney General may, in certain circumstances, authorize electronic surveillance without court order. 50 U.S.C. § 1802. But before information obtained through such surveillance may be used in any "trial, hearing, or other proceeding," FISA requires that the surveilled person and the court (or other authority) be notified. *Id.* § 1806(c). In this case, Gill alleges that the FBI used information gained through FISA-authorized surveillance in the ARC proceeding without the required disclosure.

The district court dismissed Gill's FISA claim, explaining that "[t]here must be a valid waiver of the United States' sovereign immunity for . . . Gill to bring claims against an agency of the United States," and that he had identified "no [such] waiver." *Gill v. Department of Justice*, No. 15-824, 2016 WL 3982450, at *7–8 (D.D.C. July 22, 2016). Challenging that decision, Gill relies on *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984), in which our court recognized that "sovereign immunity does not bar suits against government officials where the challenged actions of the officials are unconstitutional or beyond the official[s'] statutory authority," *id.* at 103. Gill also invokes Section 702 of the Administrative Procedure Act (APA), which operates as a waiver of sovereign immunity where, as here, the plaintiff seeks only injunctive relief. *See* 5 U.S.C. § 702. In the district court, however, Gill cited neither *Clark* nor the APA. Because Gill raises these two theories of sovereign immunity waiver for the first time on appeal, we decline to consider them. *See Odhiambo v. Republic of Kenya*, 764 F.3d 31, 35 (D.C. Cir. 2014) (holding that a new theory of sovereign immunity waiver, advanced for the first time on appeal, was forfeited).

We can just as quickly resolve Gill's claim that the FBI's revocation of his security clearance violated his rights under the due process clause. Conceding that he had no constitutionally protected property interest in his security clearance, Gill argues that the revocation infringed a liberty interest. *Doe v. Cheney*, 885 F.2d 898, 909–10 (D.C. Cir. 1989) (explaining that "no one has a right to a security clearance" but describing the conditions under which one may show that a liberty interest was violated by the revocation of a security clearance (internal quotation marks omitted)). Gill and the government debate at length about whether Gill has stated a liberty interest. But we need not venture into that thicket because even if Gill has a protected liberty interest, he received all the process that was due: a full hearing before the ARC where he had the right to counsel and the opportunity to make his case. *Id.* at 910 ("[D]ue process entitle[s] [one] to a hearing in order to refute the charges against him and to clear his name.").

Repurposing his FISA argument, Gill claims that the ARC proceeding could not have satisfied the requirements of due process because it was tainted by the alleged FISA violation. As the district court explained, however, "Gill's misconduct was uncovered through a security unit interview, not electronic surveillance authorized by FISA." *Gill*, 2016 WL 3982450, at *8 n.6. That is, "[t]he facts alleged in the Complaint and the [ARC]'s decision state [that] . . . Gill's security clearance was revoked because '. . . Gill's admitted misconduct in accessing sensitive information for personal reasons involving his family raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons.'" *Id.* (quoting ARC Opinion at 4).

Gill also argues that the ARC proceeding failed to comply with principles of due process because the Committee based its decision on "the perceived foreign influence by [Gill's] foreign born relatives who are naturalized U.S. citizens" in violation of applicable guidelines. Appellant's Br. 24. Gill misreads the ARC decision. Although the ARC does mention Gill's "ties to his foreign-born relatives," that reference appears in its synopsis of the FBI's arguments. ARC Opinion at 4. In its own analysis, the ARC made no mention of Gill's relatives. *Id.* Instead, it relied on the "straightforward concerns" Gill's "admitted misconduct" raised regarding his trustworthiness. *Id.*

Gill claims that the ARC proceeding violated due process for still another reason—the Committee took five years to issue its decision. As our court has explained, however, an agency's delay in issuing an otherwise valid decision does not offend principles of due process without some showing of harm caused by the delay. *Zevallos v. Obama*, 793 F.3d 106, 117 (D.C. Cir. 2015) (rejecting a due process challenge because plaintiff failed to show how "a faster pace would have changed [the] outcome"). According to Gill, his inability to "seek redress" in court for five years was "*per se* harm[ful]." Appellant's Br. at 26. But that is not so, as the only case Gill cites makes clear. *See Barker v. Wingo*, 407 U.S. 514, 533–36 (1972) (holding that a five-year delay between arrest and trial did not deprive the defendant of due process and explicitly eschewing a *per se* approach).

We come now to Gill's equal protection claims. Specifically, he argues that his equal protection rights were violated in two ways: because he received a harsher penalty for his admitted misconduct than non-Muslim agents who committed similar misconduct; and because the ARC treated his naturalized family members "differently than native born

[U.S.] citizens." Compl. ¶ 93. The government argues that these claims are barred by *Department of the Navy v. Egan*, 484 U.S. 518 (1988), where the Court held that the Merit Systems Protection Board had no authority to "review security-clearance determinations," *id.* at 529–31. According to the government, this means that "outside, non-expert bodies," including federal courts, "cannot review Executive Branch judgments about whether specific individuals pose a risk to the national security." Appellee's Br. 14. Gill disagrees, insisting that "*Egan* does not apply to review of security clearance decisions on the basis that they have deprived an individual of their constitutional rights." Appellant's Br. 12.

As interesting as this issue is, we need not reach it because, even if Gill's equal protection claims are not barred by *Egan*, they fail for other reasons. His claim that the ARC inappropriately took account of his family members' foreign-born status rests, as we have explained, *supra* at 6, on a misreading of the Committee's decision. The ARC relied not on any concerns about Gill's family, but rather on his "admitted misconduct" and the "straightforward concerns" it raised regarding his trustworthiness. ARC Opinion at 4.

Gill's second claim—that the FBI revoked his security clearance because he is Muslim—suffers from a different, equally fatal defect: Gill failed to raise it before the ARC. In its decision, the Committee thoroughly summarized his arguments against affirmance—i.e., his remorse and request for mercy—and that summary mentions no equal protection challenge. Moreover, nowhere in his complaint or briefing before this court has Gill alleged that the ARC ignored his constitutional challenges. Accordingly, Gill has forfeited this equal protection claim. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a

general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

## III.

For the foregoing reasons, we affirm the district court's grant of the government's motion to dismiss.

*So ordered.*

TATEL, *Circuit Judge*, concurring: Although I agree with the court's disposition of Gill's claims, I write separately to explain why, were his equal protection claims viable, they would, contrary to the government's argument, be barred neither by the Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), nor by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

Gill makes two equal protection claims. First, he alleges that he was treated differently on the basis "of his race, religion and ethnic origin." Compl. ¶ 45. Specifically, he claims that "[n]on-Muslim agents who wrongfully accessed the FBI computer system were not terminated, nor [were] their security clearance[s] revoked. Instead, non-Muslim agents were given suspensions and letters of reprimand." *Id.* ¶ 47. Second, repurposing one of his due process claims, Gill argues that the ARC denied him equal protection by treating his naturalized family members "differently than native born [U.S.] citizens." *Id.* ¶ 93.

According to the government, both claims are barred by the Supreme Court's decision in *Egan*. There, the Court considered whether the Merit Systems Protection Board could review the Navy's denial of a security clearance. 484 U.S. at 520. Observing that Article II empowers the President, as Commander in Chief, "to classify and control access to information bearing on national security," *id.* at 527, the Court held that "[p]redictive judgment[s]" about who can be trusted with classified information "must be made by those with the necessary expertise in protecting classified information," *id.* at 529. It is thus "not reasonably possible for an outside non-expert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." *Id.*

Although *Egan* rests in part on the "express language" and "structure of the statutory scheme" at issue in that case, *id.* at 530 (internal quotation marks omitted), much of the Court's reasoning sounds in broader principles of separation of powers, *id.* at 526–30. Reading *Egan* just that way, our court has extended the decision to other kinds of claims. For example, in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), we held that "under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII," *id.* at 524. *See also Oryszak v. Sullivan*, 576 F.3d 522, 525–26 (D.C. Cir. 2009) (holding based on *Egan* that "actions based upon denial of security clearance are committed to agency discretion by law" and thus "the APA provides no cause of action [for such claims]").

The government insists that this court has "never suggested in any of its decisions dismissing Title VII claims on *Egan* grounds that plaintiffs could bring the same claim of discrimination under the Constitution." Appellee's Br. 32. That is incorrect. When dismissing statutory challenges as barred by *Egan*, our court has repeatedly distinguished between statutory and constitutional claims. In *Ryan*, for instance, we "emphasize[d] that our holding [was] limited to Title VII discrimination actions and [did] not apply to actions alleging deprivation of constitutional rights." 168 F.3d at 524. Likewise, in *Oryszak v. Sullivan*, 576 F.3d 522, we qualified our statement "we have consistently held that . . . actions based upon denial of security clearance are committed to agency discretion by law," with the caveat, "at least where a constitutional claim is not properly presented," *id.* at 526.

This distinction between statutory and constitutional claims finds support in the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592 (1988). In that case, decided just

months after *Egan*, the Court held that although the CIA Director's decision to fire an employee on national security grounds was unreviewable under the APA, the employee's colorable constitutional challenge could proceed. *Id.* at 601–04. The Court distinguished between adjudicating the substance of the Director's decision, which it explained was committed to his discretion by law, and reviewing "colorable constitutional claims arising out of the actions of the Director pursuant to" that law. *Id.* at 603.

Relying on *Webster*, our court explained in *National Federation of Federal Employees v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), that "[i]t is simply not the case that all security-clearance decisions are immune from judicial review," *id.* at 289. There, we held that *Egan* presented no bar to a constitutional challenge to the Department of Defense's security clearance questionnaire. *Id*. at 290. Though recognizing that "[t]he government may have considerable leeway to determine what information it needs from employees holding security clearances and how to go about getting it," we explained that "a large measure of discretion gives rise to judicial deference, not immunity from judicial review of constitutional claims." *Id.* "No one," we observed, "would suggest [that] the government . . . could, despite the Fourth Amendment, conduct random searches without warrants in the hope of uncovering information about employees seeking security clearances. Still less would anyone consider such unconstitutional searches and seizures to be immune from judicial review." *Id.*

Other circuits have also recognized limitations on *Egan*'s reach. The Third Circuit, noting that "not all claims arising from security clearance revocations violate separation of powers," has held that constitutional claims may proceed.

*Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir. 1996). And the Ninth Circuit has recognized that, although security clearance decisions are unreviewable under the APA, *Webster* "is dispositive on [the] question" of whether those decisions are reviewable for constitutional error. *Dubbs v. CIA*, 866 F.2d 1114, 1120 (9th Cir. 1989); *see also Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990) (recognizing that "federal courts may entertain colorable constitutional challenges to security clearance decisions"). The Fourth Circuit thought it "arguable" that an equal protection claim might withstand "*Egan*'s admonition restraining court review," but has had no occasion to resolve the issue. *Jamil v. Secretary, Department of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990); *see id.* ("Whether . . . review of such alleged denial of constitutional rights is reachable by a court in the light of *Egan* presents a difficult question that we do not need to reach in this appeal . . . because . . . nothing in the record . . . indicates that the defendants acted from an improper motivation based on national origin.").

The government counters that even if some constitutional challenges may proceed, Gill's cannot for two reasons. First, equal protection challenges are, according to the government, especially likely to implicate *Egan* because "a court cannot determine in an equal protection claim whether the agency was motivated by valid security reasons or discriminatory animus." Appellee's Br. 23. An inquiry into "whether an agency's security-based reasons for revoking a security clearance are valid or pretextual," the government insists, would "'run[] smack up against *Egan*.'" *Id.* (quoting *Ryan*, 168 F.3d at 524).

But not every equal protection challenge will involve reviewing "discretionary judgments regarding a particular employee's security clearance." *Greenberg*, 983 F.2d at 290.

Some, as in *Greenberg*, will "relate to the constitutionality of the methods used" to make that decision. *Id.* Indeed, the Third Circuit has "read *Egan* and *Webster* together as holding that Article III courts have jurisdiction to hear constitutional claims arising from the clearance revocation *process*, even though the merits of that revocation cannot be reviewed." *El-Ganayni v. U.S. Department of Energy*, 591 F.3d 176, 183 (3d Cir. 2010) (emphasis added) (internal quotation marks omitted); *see also Hegab v. Long*, 716 F.3d 790, 798 (4th Cir. 2013) (Motz, J., concurring) ("In light of the holding in *Egan*, at most *Webster* permits judicial review of a security clearance denial only when that denial results from the application of an allegedly unconstitutional *policy*.").

Gill alleges that he was treated differently based on his religion and his family's national origin. *See supra* at 1. In my view, if Gill could show that the government has a policy or practice of treating Muslims or naturalized citizens differently, his equal protection claims, like the claims at issue in *Greenberg*, would not be barred by *Egan*.

The government next argues that, even if courts may review some security clearance–related equal protection claims, Gill's are precluded by Title VII because he alleges discrimination in employment and under *Brown v. General Services Administration*, 425 U.S. 820 (1976), Title VII provides the exclusive remedy for such claims, *id.* at 835. Again, this is incorrect. In *Brown*, the Supreme Court "focused on whether federal employees should be able to bring parallel actions under both Title VII and other provisions of federal law to redress the same basic injury," *Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (discussing *Brown*), and in *Ryan*, we held that "under *Egan* an adverse employment action based on denial or

revocation of a security clearance is not actionable under Title VII," 168 F.3d at 524. Contrary to the government's argument, then, Title VII cannot provide Gill's exclusive remedy since, under *Egan*, it provides no remedy at all. *See Boorstin*, 751 F.2d at 1415 (explaining that "[n]othing in [the legislative history of Title VII] even remotely suggests that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection").

To be sure, two circuits have held otherwise. *See Brazil v. U.S. Department of the Navy*, 66 F.3d 193, 197–98 (9th Cir. 1995) (holding that a constitutional challenge to a security clearance decision was precluded by Title VII); *Perez v. FBI*, 71 F.3d 513, 515 (5th Cir. 1995) (per curiam) (same). In those same opinions, moreover, both circuits held that security clearance decisions were not actionable under Title VII, effectively barring challenges to such decisions entirely. *See Brazil*, 66 F.3d at 197; *Perez*, 71 F.3d at 514–15. In so doing, however, neither circuit acknowledged the portion of *Webster* holding that constitutional claims are reviewable, nor did either explain how an inapplicable statutory scheme could possibly bar a constitutional claim.