**Michael GUILLOT, Plaintiff–Appellant,**

**v.**

**H. Lawrence GARRETT, III, in his official capacity as Secretary of the Navy; United States Navy, Defendants–Appellees.**

**No. 91–2644.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1992.

Decided June 26, 1992.

As Amended July 23, 1992.

Edward Patrick McDermott, Weinberg & Green, Baltimore, Md. (argued), for plaintiff-appellant.

William Phillip Cook, Sp. Asst. U.S. Atty., Baltimore, Md. (argued), for defen-dants-appellees (Richard D. Bennett, U.S. Atty., Baltimore, Md., on brief).

Before WILKINSON, HAMILTON, and LUTTIG, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

Appellees, the Secretary of the Navy and the United States Navy, denied appellant Michael Guillot a sensitive compartmented security clearance because Guillot failed to disclose his alcohol and cocaine addiction on forms he was required to complete in order to obtain the security clearance. Guillot unsuccessfully challenged the denial of the security clearance as violative of the Rehabilitation Act of 1973 before the Merit Systems Protection Board and the Equal Employment Opportunity Commission and then appealed to the United States District Court for the District of Maryland. The district court awarded summary judgment to appellees on the grounds that the court was without jurisdiction to decide whether the Navy's denial of the security clearance was in violation of the Rehabilitation Act and that the Navy was not required under applicable regulations to reasonably accommodate appellant's alleged handicap by transferring him to another position within the Navy.

We conclude that the district court correctly held that it was without jurisdiction to review the Navy's security clearance decision and that the Navy was under no obligation to transfer appellant to a nonsensitive position because he was not a "qualified" handicapped individual entitled to reasonable accommodation. We therefore affirm.

## I.

Appellant was employed by the Department of the Navy as a civilian Computer Specialist, GS–334–12, from November 19, 1978, until October 9, 1987, at the Naval Intelligence Processing System Support Activity (NIPSSA), a division of the Naval Intelligence Command (NAVINTCOM) in Suitland, Maryland. NAVINTCOM is re-

sponsible for interpreting intelligence information and coordinating naval defense intelligence gathering.

In 1979, appellant was cleared for access to Sensitive Compartmented Information (SCI) after a Special Background Investigation conducted by the Defense Investigative Service.[1] In order to retain his SCI clearance, appellant was subject to Special Background Investigation Periodic Reinvestigations which require submission of Statements of Personal History (DD Form 398). During one such periodic review in the summer of 1984, appellant submitted a Statement of Personal History to the Defense Investigative Service in which he denied his then-existing cocaine and alcohol dependency. In two subsequent interviews on June 5, 1984, and July 24, 1984, appellant again failed to disclose any information on his addictions.

On September 18, 1984, appellant checked himself into the Jefferson Memorial Hospital Inpatient Chemical Dependency Treatment Program in Alexandria, Virginia. Three days later, NIPSSA revoked appellant's SCI clearance. MSPB op. at 3; *Guillot v. Garrett*, No. 03890008, slip op. at 2 (E.E.O.C. Jan. 5, 1990) [hereinafter "EEOC op."]. Appellant completed his treatment programs on November 10, 1984.

On November 13, 1984, appellant returned to NIPSSA and was assigned to a position requiring only "Top Secret" clearance, rather than the more sensitive SCI clearance. In 1985, appellant requested that his SCI access be restored. Because of his failure to disclose his problems with alcohol and drugs during his Special Background Investigation Periodic Reinvestigation in the summer of 1984, NAVINTCOM determined that appellant was ineligible for SCI access under the personnel security criteria set forth in paragraph 5 of the Director of Central Intelligence Directive

1/14 (Apr. 14, 1986). MSPB op. at 3; EEOC op. at 2. His request therefore was denied by NAVINTCOM on August 13, 1985. Appellant's commanding officer, P.F. McKnight, interceded with the commanding officer of NAVINTCOM in an attempt to have NAVINTCOM reconsider its decision. On June 6, 1986, however, NAVINTCOM once again denied appellant's request.

Appellant then appealed NAVINTCOM's decision to NAVINTCOM's Access Review Board. While this appeal was pending, on August 28, 1986, NIPSSA adopted a policy that all civilian Computer Specialists must have SCI clearance. MSPB op. at 3. This policy was extended to all of NAVINTCOM's divisions at the Suitland, Maryland complex on September 12, 1986. *Id.* at 8. On May 15, 1987, the Access Review Board affirmed NAVINTCOM's decision to deny appellant SCI access. EEOC op. at 2. Appellant then appealed this determination to NAVINTCOM's Deputy Commander, who refused to overturn the Access Review Board's decision, concluding that the Board's decision was warranted because appellant "regularly did not provide full disclosures of [his] problems with alcohol and drugs over a considerable period." *Id.* at 2.

Because appellant did not possess the requisite SCI clearance, on August 13, 1987, the Deputy Head of Applications at NIPSSA recommended appellant's immediate termination. Appellant then appealed this recommendation to the Inspector General of NAVINTCOM. The Inspector General denied appellant's claim on September 30, 1987, holding that appellant's failure to disclose his past drug and alcohol drug dependency was a legitimate basis for the denial of SCI access. MSPB op. at 3. Appellant was terminated from his employment with the Navy on October 9, 1987.[2]

---

1. Access to Sensitive Compartmented Information requires clearance beyond the "Top Secret" level. SCI is classified information that is required to be handled exclusively within formal access control systems established by the Director of Central Intelligence. *Guillot v. Department of the Navy*, No. DC07528810021, slip op. at 2 (M.S.P.B. Aug. 15, 1988) [hereinafter "MSPB op."].

2. It appears that an Employee Relations Specialist with NAVINTCOM attempted to find appellant a nonsensitive position in the other Navy commands at the Suitland complex. Appellant was interviewed for the only available non-SCI position at Suitland on September 2, 1987, but was not selected. EEOC op. at 9.

Appellant appealed his termination to the Merit Systems Protection Board ("MSPB") pursuant to 5 U.S.C. § 7513 and 5 U.S.C. § 7702(a)(1).[3] The MSPB held that under *Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), it was without jurisdiction to review appellant's claim that his security clearance was denied because of his alleged handicap and that the Navy was not required to reassign appellant because he was not a "qualified" handicapped individual entitled to reasonable accommodation. MSPB op. at 6–8. Appellant thereafter filed a charge with the EEOC pursuant to 5 U.S.C. § 7702(b). On January 5, 1990, the EEOC affirmed the MSPB's denial of appellant's claims. The EEOC stated that it had the authority only to "determine[ ] whether the requirement that an individual have a security clearance in order to occupy a particular position was applied in a discriminatory manner," and it found that the Navy had "nondiscriminatorily applied the requirement of a security clearance" with respect to appellant's position at NIPSSA. EEOC op. at 8. The Commission also concluded that the Navy had fulfilled any obligation of reasonable accommodation it owed to appellant. *Id.* at 8–9; *see supra* note 2.

Appellant then brought suit in the United States District Court for the District of Maryland seeking reinstatement, back pay, record expungement, costs, and attorney's fees. On July 10, 1991, the district court granted appellees' motion for summary judgment, holding that the court had no jurisdiction to review the Navy's decision to deny appellant the SCI clearance,[4] App. at 10–18, and that the Navy was not obligated to transfer appellant to another position because he was not "qualified" for the position that he held at the time of his termination within the meaning of 29 C.F.R. § 1613.702(f), *id.* at 18–24. This appeal followed.

## II.

■ Appellant's principal claim is that the Navy discriminated against him in violation of section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, and the EEOC regulations promulgated under the authority of section 791, 29 C.F.R. § 1613.-701–709,[5] by terminating him because of his alleged handicap of alcoholism and cocaine addiction.[6] In order to advance this claim, appellant argues, as he must, that the Navy revoked his SCI clearance in violation of those provisions of law by basing the revocation on his misrepresentations to the investigators about his alcohol and cocaine addiction. "Denial of one's drug addiction and/or alcoholism," and thus misrepresentations concerning such addictions, asserts appellant, "is an integral symptom of dependency." Appellant's Br. at 5 n. 2; *see also id.* at 27 (alleging that appellant was terminated "solely because of a symptom of his handicap—denial of his use of alcohol and drugs").[7]

3. 5 U.S.C. § 7513 permits an agency to terminate an employee "for such cause as will promote the efficiency of the service" and allows a terminated employee to appeal to the MSPB. The MSPB, pursuant to 5 U.S.C. § 7702(a)(1), is authorized to hear appeals from termination decisions where the employee alleges that the termination violated section 501 of the Rehabilitation Act of 1973.

4. The district court observed that "if all a plaintiff had to do was to conclusorily allege illegal discrimination, *Egan* wouldn't amount to anything." App. at 17.

5. Under 29 C.F.R. § 1613.703, an agency may not discriminate against a "qualified handicapped person." A "qualified handicapped person" is defined as *inter alia* "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question." *Id.* § 1613.702(f).

An agency is required to "make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Id.* § 1613.704(a).

6. Appellees have conceded for purposes of this proceeding that appellant is handicapped within the meaning of the Act and the regulations. App. at 25–26.

7. Appellant did not appeal the denial of his security clearance itself. It is clear that he would have had no right to challenge denial of that clearance before the MSPB. 5 U.S.C. § 7512; *see Egan,* 484 U.S. at 531 n. 6, 108 S.Ct. at 826 n. 6. Rather appellant challenges the Navy's decision to terminate him for cause (lack

**1324**

Appellees contend that under the "clear meaning" of the Supreme Court's decision in *Egan*, which held that the MSPB is without authority to review the merits of the Navy's individual security classification decisions, the MSPB and this court are without authority to review the Navy's denial of SCI clearance to appellant even in the face of his claim of handicap discrimination. Appellees' Br. at 11–12 (citing *Peterson v. Department of the Navy*, 687 F.Supp. 713 (D.N.H.1988)).[8]  We agree.

In *Egan*, the Navy denied a security clearance to a civilian laborer because he had prior criminal convictions for assault and for being a felon in possession of a gun, because he failed to disclose two earlier convictions for carrying a loaded firearm, and because of his admission that he had had drinking problems in the past.  484 U.S. at 521, 108 S.Ct. at 820.  Egan's job, like appellant's, required this security clearance, so Egan was terminated for cause under 5 U.S.C. § 7513.  The MSPB upheld the Navy's action and, on appeal, the Supreme Court affirmed.

The Court reaffirmed "the generally accepted view that foreign policy [is] the province and responsibility of the Executive."  *Id.* at 529, 108 S.Ct. at 825 (quoting *Haig v. Agee*, 453 U.S. 280, 293–94, 101 S.Ct. 2766, 2774–75, 69 L.Ed.2d 640 (1981)).  It noted that "[t]he authority to protect

[national security] information falls on the President as head of the Executive Branch and as Commander in Chief."  *Id.* at 527, 108 S.Ct. at 824.  And it explained that the authority to "control access" to national security information is "committed by law" to the President, "flow[ing] primarily from [his] constitutional ... power[s] ... and exist[ing] quite apart from any explicit congressional grant."  *Id.*  Given the President's exclusive constitutional authority over access to national security information, the Court refused to indulge the "general proposition of administrative law" that a presumption favoring appellate review arises from the absence of a provision precluding such review.  *Id.* at 526–27, 108 S.Ct. at 823–24.  Instead, the Court appeared to hold, at the very least, that "unless Congress *specifically* has provided otherwise," the courts will not intrude upon the President's authority to grant or deny access to national security information.  *Id.* at 530, 108 S.Ct. at 825 (emphasis added).[9]

Having established this standard for assessing whether Congress has provided for review of Executive branch security clearance decisions, the Court reasoned that, although section 7513 does subject "for cause" adverse agency actions to MSPB review, that provision "by its terms does not confer broad authority on the Board to

of required security clearance), alleging that that cause was solely the result of illegal handicap discrimination.  *See supra* note 3.

**8.** The facts in *Peterson* were virtually identical to those in the present case.  The plaintiff was denied a security clearance because of "convictions for minor motor vehicle violations and for driving while intoxicated, his admitted occasional use of marijuana and hashish, and his alcohol abuse."  687 F.Supp. at 714.  He was thereafter discharged because all positions at the naval shipyard were "sensitive."  *Id.*  Plaintiff argued that *Egan* did not foreclose review of the denial of his security clearance because he alleged handicap (alcohol and drug abuse) discrimination in the denial of his clearance.  *Id.* at 715.  The district court held that the case was controlled by *Egan* and that MSPB and judicial review were barred because review of plaintiff's discrimination claim "would require the Court to undertake a substantive review of the validity of the agency's reasons for denying the clearance."  *Id.* (citing *Hill v. Department of Air*

*Force*, 844 F.2d 1407, 1411 (10th Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1988)).

**9.** The Court had no occasion to consider whether Congress could constitutionally provide for judicial or administrative review of the Executive's national security clearance decisions where statutory violations are alleged.  5306 24 6 See, *e.g., Jamil v. Secretary, Dep't of Defense,* 910 F.2d 1203, 1207 (4th Cir.1990) (reserving "question of whether *Egan* precludes courts from reviewing security clearance decisions" for Title VII discrimination).  The Tenth Circuit has recently suggested, as did the district court below, *see* App. at 16–17, that there is a substantial question whether there can be judicial review of security clearance decisions even where it is alleged that the clearance was denied in violation of constitutional rights.  *See Hill*, 844 F.2d at 1411 ("if the statutory constraints imposed in *Egan* can be bypassed simply by invoking alleged constitutional rights, it makes the authority of *Egan* hardly worth the effort").

review a security-clearance determination." *Id.* As a consequence, it held that, while "[a]n employee who is removed for 'cause' under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute [and] [t]he Board then may determine whether such cause existed[ ] and whether in fact clearance was denied, ... [n]othing in the Act ... directs or empowers the Board to go further." *Id.; see also Jamil,* 910 F.2d 1203, 1205 (4th Cir.1990) ("Implicitly, th[e] holding [in *Egan* ] certainly also indicates that no *court* which is given authority to hear appeals from the [MSPB] can reach such issues.") (emphasis added).

Appellant attempts to distinguish *Egan* on the grounds that *Egan* addressed only the "narrow question" of whether 5 U.S.C. § 7513 authorized MSPB review of security clearance determinations. Appellant's Br. at 28 (quoting *Egan,* 484 U.S. at 520, 108 S.Ct. at 820). He argues that in contrast to section 7513, "the express Congressional intent under the Civil Rights Act of 1964 (the enforcement vehicle for Rehabilitation Act violations)" provides for "court scrutiny of a security clearance decision where a *prima facie* case of discrimination has been pled." *Id.* at 29 & n. 15.

We agree with appellant that the only question before the Court in *Egan* was whether section 7513 authorized the MSPB to review the Executive's substantive decisions of whether or not to grant particular security clearances. We can discern, however, no more an expression of congressional intent in the provisions of the Rehabilitation Act or the Civil Rights Act of 1964 than in section 7513 of title 5 that the Executive's security clearance decisions be reviewable by the MSPB or by federal courts on appeal.

Section 501 of the Rehabilitation Act of 1973, which is the source of appellant's cause of action, merely requires each executive agency to prepare and submit to the EEOC "an affirmative action program plan for the hiring, placement, and advancement

of individuals with handicaps." 29 U.S.C. § 791(b); *see also supra* note 5. Section 505 of that Act, 29 U.S.C. § 794a(a)(1), provides that the remedies for violation of section 501 are those set forth in section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16,[10] which exist for violations of Title VII in *inter alia* any military department "personnel action." Certainly, Congress has not "specifically provided" in any of these provisions for either MSPB or judicial review of the Executive's security clearance decisions. None of these provisions "by its terms ... confer[s] broad authority" on courts to review security clearance determinations. *See Egan,* 484 U.S. at 530, 108 S.Ct. at 825. Nor do any of these provisions otherwise evidence the kind of unmistakable expression of purpose that the Supreme Court by necessary implication suggested in *Egan* would be required to support a conclusion that Congress intended to subject the Executive's security clearance determinations to scrutiny for violations of either section 501 of the Rehabilitation Act of 1973 or Title VII itself. *See id.*

The legislative history of section 717 of the Civil Rights Act of 1964, as well as other provisions of the Act, reinforce the conclusion that Congress did not intend to provide through that Act for administrative or judicial review of the Executive's security clearance decisions. Indeed, it appears that the Congress may have even confronted the specific question of whether there should be review of security clearance decisions under the authority of the Civil Rights Act and concluded that such decisions should instead be committed solely to the discretion of the responsible Executive branch departments and agencies. *See, e.g.,* H.Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 2137, 2185 ("In providing the statutory basis for such appeal or court access, it is not the intent of the Committee to subordinate any discretionary authority or final judgment now reposed in agency heads by, or under, statute for national

---

**10.** As added by the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 11, 86

Stat. 103, 111–12.

security reasons in the interests of the United States."); *see also* 42 U.S.C. § 2000e–2(g) (providing for private employers that "[n]otwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to ... discharge any individual from any position ... if the occupancy of such position ... is subject to any requirement imposed in the interest of the national security of the United States under any security program ... and such individual has not fulfilled or has ceased to fulfill that requirement").

■ We therefore hold that individual security classification determinations are not subject to MSPB or judicial review for alleged violations of section 501 of the Rehabilitation Act of 1973.

Appellant's claim that he was terminated in violation of the Rehabilitation Act necessarily depends upon a review of the Navy's decision denying him SCI clearance. Because we hold that that decision is unreviewable, it follows, as a matter of law, that appellant cannot prove his wrongful termination claim under 29 U.S.C. § 791.

### III.

Appellant argues that even if the revocation of his SCI clearance is upheld, appellees were obligated to transfer him to a nonsensitive position elsewhere within the Navy. He would have us hold that an agency is required under the Rehabilitation Act, *as a matter of reasonable accommodation, see* 29 C.F.R. § 1613.702(f), to transfer a handicapped individual to another position if there is an agency practice of transferring to other positions employees who become unable to perform their present jobs because of a handicap. In urging this holding, appellant relies upon footnote 19 in *School Board v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) (*dictum*), which states that

> [e]mployers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing,

they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. See n. 17, *supra;* 45 CFR § 84.12 and Appendix A, pp. 315–316 (1985).

*See also Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir.1987) (stating in *dictum* that *Arline dictum* "suggests" that as a matter of reasonable accommodation, transfer to new position required where transfers normally required under existing policies); *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580–81 (Fed.Cir.1989) (same).

■ The Navy argues that the only duty owed to a currently employed handicapped employee under the Rehabilitation Act is to reasonably accommodate that individual within the position that he presently holds. Appellees' Br. at 18. We agree and therefore decline to read the *dictum* in *Arline* in the manner proposed by appellant.

The *Arline* footnote is somewhat ambiguous, principally because of its reference to "alternative employment opportunities" following its categorical statement that employers "are not required to find another job for an employee who is not qualified for the job he or she was doing," and its indefinite reference to "existing policies." We believe, however, that the passage was intended only to restate the obvious fact, discussed earlier in its opinion, *see* 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17, that an employer is required by regulation to reasonably accommodate an employee's handicap so as to enable him to perform the functions *of the position he currently holds.* This reading of the passage is confirmed by the Court's citation to note 17 of *Arline*, which generally discusses this regulatory requirement, and to 45 C.F.R. § 84.12 and 45 C.F.R. pt. 84, app. A at 315–16 (1985), which, respectively, merely lists the factors to consider in determining whether reasonable accommodation would cause undue hardship for the employer and provides that where reasonable accommodation does not overcome the employee's handicap or causes undue hardship, the failure to hire or promote the individual will not be considered discrimination. *See Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17.

If this was not the intended meaning, then the passage at most can be read as stating the equally obvious fact that as a matter of federal administrative practice, *wholly independent of the "reasonable accommodation" requirement in 29 C.F.R. § 1613.702(f),* an employer may not forbid an employee who is unqualified for the position he currently holds from availing himself of other "employment opportunities" (*i.e.,* transfer or reassignment) that are available under the employer's "existing policies." That is, government agencies and departments must abide by their own regulations and existing statutes. *See, e.g., Board of Curators v. Horowitz,* 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978) (the requirement that agencies and departments follow their own regulations is a "principle[ ] of federal administrative law rather than of constitutional law"); *Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954).[11] Nor, under the Rehabilitation or Civil Rights Acts, may a government agency or department deny the handicapped employee—because of his handicap—opportunities that are available under existing statutes or regulations. Under either interpretation of the passage, an employer is not required as a matter of reasonable accommodation to transfer or reassign an employee who is not otherwise qualified for the position he then holds.

If footnote 19 meant that an employer is required, as a matter of reasonable accommodation, to transfer to a new position an individual who is found to be unqualified for the position he currently holds (even after reasonable accommodation), the note would be patently inconsistent with the very regulation it purports to interpret. The applicable EEOC regulation only requires reasonable accommodation of the limitations of "qualified" handicapped persons, 29 C.F.R. § 1613.704, defined as persons who "with ... reasonable accommodation, can perform *the essential functions of the position in question,*" *id.* § 1613.-702(f) (emphasis added).

Because SCI clearance, as appellant concedes, is a requirement of the position from which appellant was terminated and the Navy has denied appellant this clearance, it is evident that no amount of accommodation of appellant's alleged handicap will render him able to "perform the essential functions of the position in question." *See* Appellees' Br. at 16 ("a reassignment ... would only have accommodated plaintiff's lack of SCI access—not his handicap"). Therefore, appellees were not obligated to transfer appellant to a nonsensitive position within the Navy. *See, e.g., Carter,* 822 F.2d at 467 ("[I]f a handicapped employee cannot do his job, he can be fired, and the employer is not required to assign him to alternative employment.").

### CONCLUSION

We conclude for the reasons stated that Congress has not provided for MSPB or judicial review of the Executive's security clearance decisions for violations of the Rehabilitation Act of 1973 and that the Navy was not required to transfer appellant to a nonsensitive position as a reasonable accommodation to his alleged handicap because he was not a "qualified" handicapped employee within the meaning of the applicable EEOC regulations. The district court's award of summary judgment for appellees is, accordingly, affirmed.

**AFFIRMED.**

---

11. Appellant concedes that the Navy has no statute or regulation that would entitle him to a transfer. App. at 59.

Appellant raises for the first time in his Reply Brief the claim that *Egan* itself requires the Navy "to transfer [him] to a nonsensitive position where feasible," regardless of the reasonable accommodation provisions of the Rehabilitation Act and regulations. Appellant's Reply Br. at 5 (citing *Egan,* 484 U.S. at 530, 108 S.Ct. at

825 ("The Board then may determine ... whether transfer to a nonsensitive position was feasible.") (*dictum* )). We have previously rejected the contention that this statement in *Egan* intended "to impose on an agency the obligation, independent of statute or regulation, to transfer employees who lose their security clearance." *Jamil,* 910 F.2d at 1208; *see also Griffin,* 864 F.2d at 1580 (same).