Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge DAVIS concurred. Judge MOTZ wrote a separate opinion concurring in the judgment. Judge DAVIS wrote a separate concurring opinion.
OPINION
NIEMEYER, Circuit Judge:
When Mahmoud Hegab, an employee of the National Geospatial-Intelligence Agency (“NGA”) with a top secret security clearance, informed the agency of his marriage to Bushra Nusairat, the NGA conducted a reinvestigation into his security clearance. Based on new information, the NGA revoked Hegab’s security clearance.
Hegab commenced this action under the Administrative Procedure Act against the NGA and its Director to reverse the ■ NGA’s' decision, to reinstate his security clearance, and to award him back pay, benefits, and attorneys’ fees. In his complaint, he alleged that he presented “overwhelming evidence” to refute the NGA’s conclusions -and that the NGA staff “did not take the time or effort to review” the facts or “assumed that anything with the name ‘Islam’ associated with it is a subversive terrorist organization.” He alleged that “[i]f the latter is true ... [his] constitutionally protected rights of freedom of religion, freedom of expression, and freedom of association” were violated. The district court dismissed Hegab’s complaint under Federal Rule of Civil Procedure 12(b)(1), -concluding that it did not have subject-matter jurisdiction to review a security clearance determination.
We conclude that Hegab’s speculative and conclusory allegations of constitutional violations were essentially‘recharacteriza-tions of his challehge to the merits of the NGA’s security clearance determination and that we do not have jurisdiction to review such a determination. Accordingly, we affirm.
I
After obtaining the necessary top secret security clearance, Hegab began work for the NGA as a financial/budget analyst on January 4, 2010. The NGA, a member of the U.S. Intelligence Community and a Department of Defense Combat Support Agency, produces geospatial intelligence in *792 support of national security, and all NGA employees must possess a top secret security clearance with “sensitive compart-mented information access.”
During his orientation at the NGA, He-gab informed a security officer that after the investigation for his security clearance had been completed but before he had begun work, he had married Bushra Nu-sairat. This information prompted the agency to reinvestigate Hegab. By a memorandum dated November 2, 2010, the NGA notified Hegab that a preliminary decision had been made to revoke his security clearance, effective November 18, 2010. On January 7, 2011, Hegab was placed on unpaid administrative leave.
The proposed revocation was based on information about Nusairat, as well as earlier information that Hegab had provided during his initial security clearance investigation. The Statement of Reasons that the NGA gave to Hegab listed the facts on which it relied. It stated (1) that Hegab, his parents, and his siblings held dual citizenship with the United States and Egypt; (2) that Hegab still possessed an Egyptian passport and that it would require contact with foreign national government officials for Hegab to renounce his Egyptian citizenship and turn in his passport, which would increase the potential that he would be monitored by foreign intelligence services; (8) that Hegab stated that he was 80% certain that his wife held dual citizenship with Jordan; (4) that Hegab reported “continuing contact with multiple foreign nationals (including relatives), some of whom reside outside of the Continental United States”; (5) that Hegab had reported residing in Egypt from May 2004 to November 2007; (6) that Hegab’s spouse had attended and graduated “from the Islamic Saudi Academy, whose curriculum, syllabus, and materials are influenced, funded, and controlled by the Saudi government”; and (7) that “[information available through open sources identifies [Hegab’s] spouse as being or having been actively involved with one or more organizations which consist of groups who are organized largely around their non-United States origin and/or their advocacy of or involvement in foreign political issues.” The Statement of Reasons concluded that this information “presents an elevated foreign influence risk that is problematic and unacceptable to the national security of the United States.”
After receiving the Statement of Reasons, Hegab requested and received the file supporting the NGA’s proposal to revoke his security clearance. The file contained the information that Hegab had submitted during his initial security clearance, as wéll as the information the agency had subsequently obtained about his wife, including: (1) statements of various organizations concerning the Saudi Islamic Academy, which she had attended; (2) a photograph believed to be of her taken at an anti-war protest in Washington, D.C., depicting her- carrying a sign bearing the website identification of an organization named “ANSWER” and stating, ‘War No — Act Now to Stop War and End Racism”; (3) a statement indicating that after graduating from the Islamic Saudi Academy in 2005, she attended George Mason University, where she studied “Global Affairs, International Development, Diplomacy and Global Governance, Islamic Studies,” and was the president of a student group called Students for Justice in Palestine; and (4) information concerning her employment at a non-profit organization called Islamic Relief USA.
Hegab submitted a detailed response to the NGA to explain the evidence, but the agency nonetheless issued a final decision on March 4, 2011, revoking Hegab’s securi *793 ty clearance. The decision informed Her gab that:
Your response has mitigated the concerns of citizenship, foreign contact, overseas employment and residency, as well as.your spouse’s education at the Islamic Saudi Academy. However, the information provided does not mitigate your spouse’s current affiliation with one or more organizations which consist of groups who are organized largely around their non-United States origin and/or their advocacy of or involvement in foreign political issues. This concern elevates the potential for conflicts of interest between your obligation to protect sensitive or classified United States information and technology and your desire to help a foreign person, group, or country by providing that information.
Hegab appealed the decision to the NGA Personnel Security Appeals Board, submitting a written response and 85 exhibits focused on Islamic Relief USA. And on July 26, 2011, he appeared with counsel at a hearing before the Board and presented additional evidence about Islamic Relief USA. The next day, the Board issued its decision affirming the agency’s revocation of Hegab’s security clearance and advising Hegab that the Board “determined that your written appeal and the information provided during your personal appearance failed to mitigate security concerns.”
Seeking review of the Board’s decision, Hegab commenced this action against the NGA and its Director, L’etitia Long,' in her official capacity, alleging that the revocation of his security clearance “was based solely on [his] wife’s religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization” and that the NGA’s actions therefore violated his constitutional rights. In six counts, he alleged violations of the Free Speech Clause of the First Amendment, the Free Exercise Clause of the First Amendment, the freedom of association protected by the First Amendment, the Due Process Clause of the Fifth Amendment, a right to privacy under the Ninth Amendment, and a right to equal protection under the First, Fifth, Ninth, and Fourteenth Amendments.
The NGA and its Director filed a motion to dismiss the complaint for lack of sub.-ject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Following a hearing on the motion, the district court dismissed the complaint without prejudice under Rule 12(b)(1) for lack of subject-matter jurisdiction. The court found that “Hegab’s claims, though framed as constitutional violations, concern the merits of NGA’s decision to revoke his security clearance,” and “[a]bsent clear congressional directive, which Hegab fails to identify, such review is flatly prohibited by [Department of Navy v.] Egan [484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) ] and Fourth Circuit precedent,” referring to Reinbold v. Evers, 187 F.3d 348, 357-58 (4th Cir.1999), and Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir.1992).
This appeal followed.
II
Both Hegab and the NGA appear to agree with the proposition that no one has a right to a security clearance and that the grant of a security clearance is a highly discretionary act of the Executive Branch. They also recognize that the Fourth Circuit has concluded that security clearance determinations are generally not subject to judicial review. As the Supreme Court observed in Egan, “the protection of classified information must be committed to the broad discretion of the *794 agency responsible, and this must include broad discretion to determine who may have access to it.” Egan, 484 U.S. at 529, 108 S.Ct. 818. Thus, when we have been asked to review security clearance decisions, we have concluded that courts are generally without subject-matter jurisdiction, recognizing that a court should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risks. See Reinbold, 187 F.3d at 357-58; Becerra v. Dalton, 94 F.3d 145, 148-49 (4th Cir.1996); Guillot, 970 F.2d at 1326. The Egan Court amplified the reasons for this, stating, “it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.” Egan, 484 U.S. at 529, 108 S.Ct. 818. Rather, the agency head charged with the protection of classified information “ ‘should have the final say in deciding whether to repose his trust in an employee who has access to such information.’ ” Id. (emphasis added) (quoting Cole v. Young, 351 U.S. 536, 546, 76 S.Ct. 861, 100 L.Ed. 1396 (1956)). Harkening to separation of powers concerns, the Court emphasized that “ ‘the courts have traditionally shown the utmost deference to Presidential responsibilities.’ Thus ... courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.” Id. at 530, 108 S.Ct. 818 (quoting United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)); see also Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (finding questions to be political and non-justiciable when, among other things, there is an absence of “judicially discoverable and manageable standards for resolving” the question; the question cannot be decided “without an initial policy determination of a kind clearly for nonjudicial discretion”; or it is impossible for a court to • “undertak[e] independent resolution without expressing lack of the respect due coordinate branches of government”).
Therefore, as the parties recognize, it is well established in our circuit that absent a specific mandate from Congress providing otherwise, federal courts are generally without subject-matter jurisdiction to review an agency’s security clearance decision. See Reinbold, 187 F.3d at 357-58; Becerra, 94 F.3d at 148-49; Guillot, 970 F.2d at 1325-26.
Hegab argues, however, that his complaint should not be dismissed by application of those established principles because, as he contends, even security clearance decisions must be subject to judicial protection of individual rights guaranteed by the Constitution. He maintains that because his complaint has alleged constitutional claims, the claims should be adjudicated in court, citing Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). In Webster, the governing statute authorized the CIA Director to terminate employees “whenever [the Director] shall deem such termination- necessary or advisable in the interests of the United States.” Id. at 594, 108 S.Ct. 2047. The Court held that this statutory provision did not preclude judicial review of “colorable constitutional claims arising out of the actions of the Director.” Id. at 603, 108 S.Ct. 2047. It reached this conclusion “to avoid the ‘serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” Id.
This case thus raises the issue of where to draw the line, if there is such a line, between the political question of reviewing the merits of a security clearance decision and the judicial question of whether an *795 Executive Branch agency violated an individual’s constitutional rights when denying or revoking, his or her security clearance.
In the cases we have decided, we have left open the question of whether we can review a security clearance decision even where an individual presents a colorable claim that the agency’s decision violated his or her constitutional rights. See Rein-bold, 187 F.3d at 358 (noting that “it is arguable that we could review an agency’s security clearance decision in the limited circumstance where the agency’s security clearance decision violated an individual’s constitutional rights”); Jamil v. Sec’y, Dep’t of Def., 910 F.2d 1203, 1209 (4th Cir.1990) (“Whether, however, review of [an] alleged denial of constitutional rights is reachable by a court in the light of Egan presents a difficult question that we do -not need to reach in this appeal” because “nothing in the record, other than [the plaintiffs] conclusory assertion,” supported his constitutional claims). And other courts have not come to a consensus on this question. See, e.g., El-Ganayni v. U.S. Dep’t of Energy, 591 F.3d.176, 183-85 (3d Cir.2010) (holding that the court had jurisdiction to review plaintiffs claims that an agency violated his constitutional rights in the process of revoking his security clearance, but concluding that any claim that requires reviewing the merits of the security clearance decision fails to state a claim); Oryszak v. Sullivan, 576 F.3d 522, 526 (D.C.Cir.2009) (noting that while courts may have jurisdiction over the review of security clearance claims, such claims other than constitutional claims fail to state a claim); Dorfmont v. Brown, 913 F.2d 1399, 1401-04 (9th Cir.1990) (holding that courts lack jurisdiction to review the merits of security clearance determinations, except possibly in the limited’ case where an individual has a colorable constitutional claim); Hill v. Dep’t of Air Force, 844 F.2d 1407, 1411 (10th Cir.1988) (suggesting that Egan would be “hardly worth the effort” if it could be “bypassed simply by invoking alleged constitutional rights”).
But in this case, we need not decide whether and where the line should be drawn because we conclude that Hegab’s complaint merely challenges the merits of the NGA’s security clearance decision and his conclusory constitutional claims are unsuccessful attempts to circumvent the undisputed proposition that we will not review the merits. of a security clearance decision.
Hegab’s complaint is factually fulsome, setting forth in detail — over a span of some 15 pages — the communications between him and the NGA during a period from January 2010 to September 2011. He alleged that after the investigation for his security clearance had been completed and he had been granted clearance, he married Nusairat and so advised the NGA. That fact prompted the agency to conduct another investigation and to conclude, based on this investigation and other materials that Hegab had previously submitted, that’ Hegab’s séeurity clearance should be revoked. Before reaching its final decision, the NGA gave Hegab its reasons and identified the evidence giving it concern. Hegab responded with additional evidence and explanations in an effort to rebut the NGA’s evidence and reasoning. While the evidence he presented allayed some of the NGA’s concerns, the NGA adhered to its preliminary decision to revoke his clearance, explaining that his wife’s affiliation with “one or more organizations which consist of groups who are organized largely around their non-United States origin and/or their advocacy of or involvement in foreign political issues” created potential conflicts with Hegab’s “obligation to protect sensitive or classified United States information.”
*796 Hegab appealed the decision to the NGA Personnel Security Appeals Board and presented 85 exhibits to the Board in support of his appeal, contending that his evidence was “overwhelming” in refuting the NGA’s conclusions. The Board, after conducting a hearing, nonetheless affirmed the agency’s decision.
Based on these historical facts, Hegab alleged in his complaint that the “NGA’s security staff either did not take the time or effort to review the readily available information previously presented to it, or other open source information, or that the security staff assumed that anything with the name ‘Islam’ associated with it is a subversive terrorist organization.” (Emphasis added). And he alleged further that the NGA’s decision “reflects, most generously, a failure to examine and a misunderstanding of the facts and, less generously, an anti-Islamic bias among the NGA security staff.” His complaint then concluded, “[ijf the latter is true,” the NGA’s “actions and conclusions would be in violation of plaintiffs and his wife’s constitutionally protected rights of freedom of religion, freedom of expression, and freedom of association.” (Emphasis added). Based on these allegations, the complaint set forth in six counts various causes of actions grounded in different provisions of the Constitution. But each count alleged the same factual basis:
The revocation of plaintiffs security clearance and access to classified information by defendant was based solely on plaintiffs wife’s religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.
The complaint alleged no facts to support the claim that anyone at the NGA in fact held the hypothesized bias or said anything that indicated such a bias. To the contrary, the agency’s alleged bias is stated as the speculative product of an ambivalent allegation in the complaint that the NGA security staff either failed to take the time or effort to review the available information or were biased against Islam.
These allegations amount to no more than a challenge to the merits of the agency’s security clearance determination, implying that the determination was irrational and unsupported by the evidence. Indeed, Hegab alleged as much, stating that he provided “overwhelming” evidence to refute the reasons given by the NGA. But these are exactly the type of claims that we have held are beyond the subject-matter jurisdiction of a district court. As we explained in Reinbold, decided in a similar circumstance:
Reinbold essentially concedes that, to decide his Fourth Amendment claim on the merits, we must determine whether the NSA wrongly ¡suspended his SCI security clearance. This is precisely the type of review that Egan prohibits.
Reinbold, 187 F.3d at 358 (distinguishing claims only focused on the merits from constitutional claims).
Hegab’s constitutional allegations are conclusory only, resting on his disagreement with the NGA’s decision on the merits. Reasoning from the premise that the NGA’s decision was wrong — in particular, that it was irrational and unsupported by the evidence — he concludes that the decision must therefore have been the product of an unconstitutional bias. The conclusion, however, does not follow, and no independent facts are alleged to support such a bias. When that is understood, it becomes apparent that Hegab’s constitutional claims depend entirely on his disagreement with NGA’s review of the evidence and- his conclusion that the agency did not make its decision for the reasons that it gave and therefore must have acted from an unconstitutional bias. This type of speculative claim, however, does not *797 state a colorable constitutional claim. See Reinbold, 187 F.3d at 358-59; Jamil, 910 F.2d at 1209. Hegab’s constitutional claims are in substance merely creative recharacterizations of his allegation that the NGA made the wrong decision and that its decision was irrational and unsupported by the evidence. Such a challenge goes to the merits of the security clearance determination, the review of which does not fall within our jurisdiction. See Reinbold, 187 F.3d at 357-58.
In its security clearance determination, the NGA concluded that Hegab had failed to -mitigate its concern of “an elevated foreign influence risk that is problematic and unacceptable to the national security of the United States,” and this conclusion is one in which the NGA “should have the final say,” Egan, 484 U.S. at 529, 108 S.Ct. 818, and in which courts should not intrude, id. at 530, 108 S.Ct. 818.
Accordingly, the judgment of the district courtis

AFFIRMED.