**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1475**

———————

MONAL PATEL,

        Plaintiff − Appellant,

      v.

DEPARTMENT OF THE ARMY; DEPARTMENT OF DEFENSE; CHRISTINE WORMUTH, in her official capacity as Secretary of the Army,

        Defendants − Appellees.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:20-cv-01016-CMH-IDD)

———————

Argued:  September 26, 2024                    Decided:  December 18, 2024

———————

Before THACKER, RICHARDSON, and BENJAMIN, Circuit Judges.

———————

Affirmed by unpublished opinion.  Judge Benjamin wrote the opinion in which Judge Thacker and Judge Richardson joined.

———————

**ARGUED:**   Madeline Brown, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Peter B. Baumhart, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.  **ON BRIEF:**  Noah B. Curtiss, Cody B. Fisher, Student Counsel, Erica Hashimoto, Supervising Attorney, Appellate Litigation Clinic, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Jessica D. Aber, Peter B. Baumhart, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

This case involves a civilian employed on a military base whose access to military facilities was revoked after an investigation into his alleged off-duty misconduct and threatening behavior. Monal Patel, a former government contractor, alleges that the Department of the Army, the Department of Defense (DoD), and Ryan McCarthy, then Secretary of the Army,[1] (collectively, "Appellees") violated his due process rights and his rights under the Privacy Act of 1974, 5 U.S.C. § 552a, by storing and allowing his employer to upload an incident report in the DoD's Joint Personnel Adjudication System ("JPAS"),[2] and by revoking his Common Access Card ("CAC"). *See* U.S. Const. amend. V, cl. 2; *see* 5 U.S.C. § 552a(g)(1)(C), (D). Patel also contends that the district court failed to recognize that his amended complaint stated a cause of action under the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706(2)(A). The district court dismissed all of Patel's claims due to lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). We affirm.

I.

A.

Patel worked for Credence Management Solutions, LLC, a defense contractor for the Army and DoD. After Patel began working for another Army defense contractor,

---

[1] Christine Wormuth was substituted for Ryan McCarthy on July 23, 2021, after becoming Secretary of the Army.

[2] JPAS is the DoD's personnel security clearance and access database.

3

Galorath, Inc., Appellees allowed Credence to upload an incident report containing adverse information about Patel into the DoD's JPAS, which "red flagg[ed]" Patel's JPAS record. J.A. 69. The incident report is "in large part . . . a charge of misconduct and insider threat behavior." J.A. 79.

The incident report triggered a weeklong investigation by the Army into Patel's alleged misconduct. This investigation prompted the Army to revoke Patel's CAC and corresponding access to DoD buildings and systems. Because of the CAC revocation, Galorath fired Patel, and he later lost employment with a different defense contractor.

B.

Patel alleges that Appellees violated his Fifth Amendment due process rights because he was not afforded notice and an opportunity to be heard before his CAC was revoked. He also asserts that Appellees violated his rights under the Privacy Act by maintaining the incident report in the JPAS and failing to collect information from him directly.[3] The district court dismissed all claims due to lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because it determined that Patel's claims involve national security considerations left to the sole discretion of the executive branch.

On appeal, Patel challenges the dismissal of his due process and Privacy Act claims and argues that the district court failed to address his APA claim. The court reviews a Rule 12(b)(1) dismissal de novo. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500,

---

[3] Patel also brought claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), but he does not pursue those claims on appeal.

4

505 (4th Cir. 2015). Because the district court reached its decision before holding an evidentiary hearing or making any factual findings, "all the facts alleged in the complaint are assumed to be true and [Patel], in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). The court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## II.

### A.

Before determining whether the court has jurisdiction over Patel's claims, we must first consider whether his CAC implicates national security concerns.

Patel argues that under *Toy v. Holder*, 714 F.3d. 881 (5th Cir. 2013), building access is distinguishable from a security clearance and does not invoke national security concerns. Appellees rely primarily on *Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886 (1961), and *Berry v. Bean*, 796 F.2d 713 (4th Cir. 1986), for the proposition that the executive branch's authority over national security is broad and includes the right to exclude a civilian from its facilities for any facially valid reason. Because this court's precedent is unambiguous, we find that the latter argument controls.

### B.

The executive branch's determination that exclusion from a government facility is warranted for national security concerns is entitled to "great deference." *Berry*, 796 F.2d at 717; *see also Cafeteria Workers*, 367 U.S. at 890, 892–94. This power "is limited only

5

by the requirement that the [Government] not rely on grounds that are patently arbitrary or discriminatory." *Berry*, 796 F.2d at 717 (citation omitted); *see also Cafeteria Workers*, 367 U.S. at 898 (noting appellant "could not have been kept out because she was a Democrat or a Methodist"). Therefore, "we may consider only whether [the Government] states facially valid reasons for exclusion, with no scrutiny of the factual basis for the exclusion." *Berry*, 796 F.2d at 717.

In *Cafeteria Workers*, a civilian contractor challenged her exclusion from a Navy installation after her identification badge was withdrawn because she "failed to meet the particular security requirements of that specific military installation." *See* 367 U.S. at 887–88, 898–99. The Supreme Court held that the contractor's challenge of her exclusion was meritless because the reason for excluding her was "entirely rational." *Id.* at 898.

Likewise in *Berry*, this court held that barring a military dependent from an Air Force base was permissible after a traffic stop revealed evidence of the dependent's drug use. *See* 796 F.2d at 714–15. In so doing, we refused to second-guess "the historically unquestioned power of a commanding officer summarily to exclude civilians from his area of command." *Id.* at 717 (quoting *Cafeteria Workers*, 367 U.S. at 893). Because the commander stated "facially valid reasons for exclusion," we declined to "scrutin[ize] . . . the factual basis for the exclusion." *Id.* at 717. We emphasized that the plaintiff "ha[d] no chance of success," because it is "difficult to conceive of an area of governmental activity in which the courts have less competence" than "the military context in which [the case] arose." *Id.* at 716 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). *Berry* therefore reinforced the principle articulated in *Cafeteria Workers*—that when it comes to

6

issues of national security, including control over who does and does not access a military base, the court is usually not the appropriate forum to second-guess the executive branch.[4]

*Toy v. Holder* is not binding on us and is factually distinguishable from this court's precedents. Therefore, it cannot help Patel. In *Toy*, the Fifth Circuit held that Toy's building access was different from security clearance determinations, which are sheltered from scrutiny. See 714 F.3d. at 885–86. The court reasoned that unlike security clearance determinations, Toy's building access could be revoked without any investigation, and by a lone supervisor who is untrained in making security decisions. *See id.* Here, however, Patel's own complaint acknowledges that there was a *weeklong* investigation into the alleged misconduct before "[t]he *Army* reached a decision . . . to revoke [his] CAC and all buildings access." J.A. 76 (emphasis added). *Toy* is therefore inapposite.

We conclude that Patel's CAC implicated national security concerns such that Appellees had the right to summarily revoke the CAC and Patel's corresponding access to military facilities. According to Patel himself, Defendants had a facially valid reason for denying him access—an unfavorable incident report which alleged that he engaged in "off-duty misconduct" and "insider threat behavior." J.A. 71, 79. Appellees were therefore justified in excluding Patel from military facilities to ensure safety and security.

---

[4] *See also United States v. Cassiagnol*, 420 F.2d 868, 874 (4th Cir. 1970) ("The Pentagon, being of peculiar and significant importance to the defense of the United States, could constitutionally be made a totally restricted area and the government could deny any public access to the building or its grounds if it so desired." (collecting cases)); *Artist v. Va. Int'l Terminals, Inc.*, 857 F.2d 977, 978 n.3 (4th Cir. 1988) ("*Cafeteria Workers* [] deal[t] with the general authority of government to exclude individuals from government property.").

7

III.

A.

Having determined that Patel's CAC implicated national security concerns, the court now considers whether that fact bars subject-matter jurisdiction over his claims. It does.

The court's subject-matter jurisdiction "runs aground when it encounters concerns of national security[.]" *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988); *see also Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013). Access to military facilities is a matter of national security, subject to the province of the executive branch. *See, e.g.*, *Berry*, 796 F.2d at 717. "[C]lassifying and controlling access to 'information bearing on national security' is the province of the Executive." *Campbell v. McCarthy*, 952 F.3d 193, 202 (4th Cir. 2020) (quoting *Egan*, 484 U.S. at 527). Therefore, "courts are generally without subject-matter jurisdiction" to review any claim implicating a security clearance decision or a decision to exclude someone from a military base, as the judiciary "should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risks." *Hegab*, 716 F.3d at 794 (affirming dismissal of constitutional claims).

B.

In support of his argument that we have jurisdiction over his Privacy Act claims, Patel tries to distinguish the investigation which led to the revocation of his CAC from the Army's ultimate decision to revoke the CAC. He contends that even if the latter is

8

unreviewable, the former is not.  But this argument eschews our precedent, as the court has continuously held that both are shielded from judicial scrutiny.

In *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996), the court considered whether there was jurisdiction to review a claim that a security clearance investigation was a form of retaliation.  *See id.* at 148.  The court recognized that "the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference."  *Id.* at 149.  Therefore, the court held that it lacked jurisdiction because "if permitted to review the initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable."[5]  *Id.*

Patel's claims are no different.  He asks us to question the validity of Appellees' investigation into his alleged misconduct and threatening behavior, arguing it can be distinguished from the ultimate decision to revoke his CAC.  But *Becerra* makes clear that the two are indistinguishable for purposes of subject-matter jurisdiction.

Patel further argues that the court's decision on the merits in *Reinbold v. Evers*, 187 F.3d 348 (4th Cir. 1999), confirms that it has jurisdiction over his Privacy Act claims.  *See id.* at 359–63.  But this argument is futile because "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the

---

[5] *See also Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 431–32 (4th Cir. 2022) (holding that courts lack jurisdiction to review the CIA's decisional process for hiring employees because the process "involve[s] predictive judgments and implicat[es] the concerns discussed in *Egan*").

9

proposition that no defect existed." *Martinez v. Garland*, 86 F.4th 561, 571 (4th Cir. 2023) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011)). Since issues of national security abrogate this court's jurisdiction, Patel's *Reinbold* argument is unavailing and the court declines to exercise jurisdiction over his Privacy Act claims.

C.

Patel next argues that Appellees violated his due process rights because he was not afforded notice and an opportunity to be heard before his CAC was revoked. But *Egan* similarly precludes such claims. *See Mowery*, 42 F.4th at 441 n.13.

"[B]ecause an individual does not have a property or liberty interest in a security clearance, *Egan* precludes a due process claim based upon an agency's security clearance decision." *Reinbold*, 187 F.3d at 358. *Egan* prevents such claims because courts are forbidden from questioning the predictive judgments of those in the executive branch "with the necessary expertise in protecting classified information." *Egan*, 484 U.S. at 529. Here, determining whether the revocation of Patel's CAC was "irrational or unsupported . . . goes to the merits of the security clearance determination, the review of which does not fall within our jurisdiction." *Hegab*, 716 F.3d at 797. Accordingly, Patel's due process claims are unviable.

IV.

Patel asserts for the first time on appeal a claim under the APA based on Appellees' alleged failure to follow their own regulations. He asks the court to construe his amended complaint as asserting an APA claim based solely on his use of two words: "arbitrary" and

10

"unpredictable." J.A. 82. While it is true that the court liberally construes *pro se* complaints like Patel's, his argument overstretches the liberal construction afforded to *pro se* pleadings in a way that amounts to a "complete rewriting" of the amended complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

First, only one of Patel's supposed indicator words—arbitrary—appears in the APA itself, so it is unclear why the word "unpredictable" would have hinted at a claim under that statute. *See* 5 U.S.C. § 706(2)(A) (providing a remedy for agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). And second, courts do not "conjure up questions never squarely presented to them," nor do they "construct full blown claims from sentence fragments, which is essentially what [Patel] is seeking here." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). For these reasons, Patel's brand-new APA claim fails.

V.

The principle of separation of powers precludes us from redressing Patel's claims. The district court's decision is

*AFFIRMED.*

11