# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 11, 2018         Decided July 24, 2018

No. 16–5347

MATTHEW RICHARD PALMIERI,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01403)

———

*Ryan Giles*, Student Counsel, argued the cause as *amicus curiae* in support of the appellant. *Thomas Burch*, appointed by the court, and *Holly Boggs* and *Aidan Moss*, Student Counsel, were with him on brief.

*Matthew Richard Palmieri*, pro se, filed the briefs for the appellant.

*Charles W. Scarborough*, United States Department of Justice, argued the cause for the appellees. *Jessie K. Liu*, United States Attorney, and *R. Craig Lawrence* and *W. Mark Nebeker*, Assistant United States Attorneys, were with him on brief.

Before: HENDERSON, GRIFFITH and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* KATSAS.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Matthew Palmieri had a security clearance and gainful employment with a government contractor. He lost both, allegedly at the hands of federal agencies and officials bent on destroying his career. Palmieri sued the agencies and officials (collectively, defendants or government),[1] claiming they put him through a "Kafkaesque" investigation and "Star Chamber" proceeding and thereby violated his rights. Pl.'s Am. Compl. (Compl.), Dkt. No. 14 at 4 (July 23, 2013). In the order at issue, the district court dismissed most counts of Palmieri's complaint and granted summary judgment to the government as to a portion of one count. Joint Appendix (JA) 462-63; *Palmieri v. United States*, 72 F. Supp. 3d 191 (D.D.C. 2014). With the aid of court-appointed amicus curiae, Palmieri appeals.[2] We affirm.

---

[1]    Palmieri's complaint names the United States; the State Department; the Defense Department; the Defense Office of Hearings and Appeals; the Defense Manpower Data Center; the Central Intelligence Agency; the Office of Personnel Management; the Financial Crimes Enforcement Network; the United States Navy; the Office of Naval Intelligence; the Naval Criminal Investigative Service; the Defense Security Service; and certain officers and employees of the latter three agencies.

[2]    We thank amicus for able briefing and argument.

## I.  BACKGROUND

We draw the facts primarily from the complaint, whose well-pleaded allegations we take to be true.  *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017).  We also take account of undisputedly authentic documents cited in and "integral to" the complaint.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] n.35 (3d ed. 2018).  Because the complaint is prolix, weighing in at 163 pages, we highlight only the essentials.

### INVESTIGATION

Palmieri worked as a systems engineer for a contractor at a United States naval base in Bahrain.  He had a security clearance.  In June 2009, he and a Navy reservist friend had dinner with two Syrian nationals, one of whom worked for the Syrian embassy.  The reservist told Palmieri that "she felt compelled to report" to American authorities their contact with foreign nationals.  JA 352.  Later, the reservist in fact reported the contact, mentioning that Palmieri had introduced her to the Syrians.  According to the reservist, Palmieri had asked her *not* to report his association with the Syrians.

The government opened an investigation.  Without telling Palmieri, agents of the Naval Criminal Investigative Service (NCIS) reviewed his work emails, copied files from his office computers and kept tabs on his travel.  In May 2010, the agents "interrogated" him.  Compl. 19-20.  They told him he was free to leave but that, if he did not answer their questions, his security clearance would be suspended.  Afterward, the agents reported to Navy lawyers that Palmieri had been "evasive" and "unwilling to provide information."  *Id*. at 21.  Palmieri's supervisors had him removed from the base.  NCIS

agents searched his office and computers and seized his work documents.

Palmieri returned to the United States and continued working in a contractor job that required a security clearance. In July 2011, he submitted to an NCIS polygraph test. Thereafter, in a letter to the Defense Department, NCIS agent Lynda Carpenter summarized the investigation and the results of the polygraph test. According to her letter:

- The reservist told authorities that Palmieri had asked her "not to report his association with the Syrian nationals to anyone inside of the U.S. government."

- In a security form, Palmieri "did not acknowledge any ongoing foreign national contacts or associations with foreign government officials."

- When the NCIS agents interviewed Palmieri, he was "reluctant to provide information" about his foreign contacts. He eventually "disclosed ongoing contact with an employee of the Syrian embassy" but "only after it was revealed [that] NCIS officials were already aware of the relationship."

- During the polygraph test, Palmieri was asked if he possessed "classified material outside of government control" or "provided classified information to unauthorized personnel." The polygraph indicated "[d]eception . . . in his responses to both questions."

JA 230-31.

In August 2011, the Defense Department suspended Palmieri's security clearance "pending a final clearance

decision from the Defense Office of Hearings and Appeals [(DOHA)]." Compl. 30. As a result, Palmieri's employer fired him.

## ADMINISTRATIVE AND DISTRICT COURT PROCEEDINGS

By executive order, as implemented through Defense Department Directive 5220.6 (Aug. 30, 2006), perma.cc/2DQ4-Z4KW, a contractor is not to be granted a security clearance unless clearance "is clearly consistent with the national interest," *id*. ¶ 3.2; *see* Exec. Order No. 10865 § 2, 25 Fed. Reg. 1583 (Feb. 20, 1960). In September 2012, per the Directive, the Defense Department issued a Statement of Reasons explaining why the government was "unable to find that it is clearly consistent with the national interest" for Palmieri to regain clearance. JA 196; *see* Compl. 33. The Statement of Reasons alleged (*inter alia*) that Palmieri displayed "questionable judgment" by asking the reservist "not to disclose [his] association with . . . Syrian nationals." JA 196; *see* Compl. 34. In a written response, Palmieri denied the allegations.

The matter was submitted to a DOHA administrative judge to determine whether to revoke Palmieri's security clearance. Over Palmieri's confrontation and hearsay objections—and after Palmieri declined an opportunity to call the reservist as a witness—the judge admitted Carpenter's letter. Palmieri testified at length and "denied that he told the [reservist] not to mention his name." JA 188. The judge discredited this testimony, finding that Palmieri was "evasive and less than completely forthcoming." JA 188, 194. Ultimately, the judge concluded that Palmieri had indeed displayed questionable judgment in "attempt[ing] to convince [the reservist] to leave him out of her report." JA 193.

Accordingly, the judge revoked his clearance. The DOHA appeal board affirmed.

Palmieri filed suit, raising an assortment of constitutional and statutory claims. His 30-count complaint invokes (*inter alia*) the Bill of Attainder Clause, U.S. CONST. art. I, § 9, cl. 3; the Treason Clause, *id*. art. III, § 3, cl. 1; the Due Process Clause, *id*. amend. V; the First, Fourth, Ninth and Tenth Amendments; the Privacy Act, 5 U.S.C. § 552a; the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*; the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; and the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*

In the order under review, the district court dismissed twenty-three counts: Counts 1-20, 22, 28 and 30. Also, the court partially dismissed Count 21 and granted summary judgment to the government on the remainder of that count. Finally, the court ordered Palmieri to "file a more definite statement about" the other six counts: Counts 23-27 and 29. JA 462. It later granted summary judgment to the government on those six counts. In our claim-by-claim analysis, we summarize the necessary particulars of Palmieri's theories of liability and the district court's grounds of decision.

## II. ANALYSIS

First we clear some underbrush. We need not consider Counts 3, 7, 9 and 16 because Palmieri expressly forfeits any challenge to their dismissal. Appellant's Br. 32 (he "invites" us to "dispense" with them). We need not consider Counts 10-11, 17-18, 23-27 and 29 because neither Palmieri nor amicus raises any argument about them. *See S. Cal. Edison Co. v. FERC*, 603 F.3d 996, 1000 (D.C. Cir. 2010) ("A party can and does [forfeit] any argument not presented in our court except those going to our own jurisdiction or similar structural

issues[.]"). And we need not consider Counts 28 and 30 because Palmieri acquiesced in their dismissal. Our task, then, is to decide whether Palmieri or amicus advances any good reason to reinstate any of the other fourteen counts: Counts 1-2, 4-6, 8, 12-15 and 19-22. We think not.

## COUNTS 2, 20 AND 22: FRIVOLOUS CONSTITUTIONAL CLAIMS

Count 2 alleges that the government violated Palmieri's "natural rights" by investigating him and gathering information about him. Compl. 46. Count 20 alleges that Carpenter's letter and the ensuing revocation of Palmieri's clearance were part of a "Soviet-style" government conspiracy to "punish" Palmieri through "extrajudicial" means. *Id*. at 104, 107. Count 22 alleges that the conspiracy was motivated by "ethnic, lingu[i]stic, religious, and/or racial" animus. *Id*. at 116; *see id*. at 115 (alleging that defendants acted as they did because of Palmieri's "associations with Arab and/or Muslim individuals"). According to Counts 2, 20 and 22, this conduct violated the Bill of Attainder Clause, the Treason Clause and the First, Fifth, Ninth and Tenth Amendments.

The district court concluded that Counts 2, 20 and 22 are barred by *Department of Navy v. Egan*, 484 U.S. 518 (1988). We agree. *Egan* holds that "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id*. at 527; *see Oryszak v. Sullivan*, 576 F.3d 522, 525-26 (D.C. Cir. 2009). The idea is that "an outside non-expert body," including a court, is institutionally ill suited to second-guess the agency's "[p]redictive judgment" about the security risk posed by a specific person. *Egan*, 484 U.S. at 529. Counts 2, 20 and 22 ask us to engage in just this sort of Monday-morning quarterbacking: as the district court put it, these counts effectively challenge the government's

decisions "to conduct a security clearance investigation" and to resolve it in a particular way. *Palmieri*, 72 F. Supp. 3d at 203 n.5.

Granted, we have recognized an exception to *Egan* for some constitutional claims challenging "the methods used to gather information on which [a clearance decision] presumably will be based." *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993). But the exception does not save "a wholly frivolous constitutional claim or an immaterial one advanced solely for the purpose of" circumventing *Egan*. *Id*. "[W]holly frivolous" well describes Counts 2, 20 and 22. We see no law in Palmieri's briefs, or amicus's, to suggest Palmieri suffered an actionable violation under the provisions these three counts invoke.[3]

## COUNTS 1 AND 8: PRIVACY ACT CLAIMS

Count 1 claims that, in violation of the Privacy Act, the defendants created an agency record "concerning [Palmieri's] exercise of First Amendment . . . activities," including his "[a]ssociation[s]" and "[t]ravel." Compl. 42. Count 8 likewise claims a violation of the Privacy Act, alleging that NCIS agents acquired some of Palmieri's personnel records under false pretenses. The district court dismissed both counts, again concluding that *Egan* bars them. We affirm

---

[3] Amicus concedes that Counts 20 and 22 are barred because they "challenge the . . . decision to revoke [Palmieri's] security clearance or present no colorable constitutional challenge to the revocation process." Amicus Br. 30-31 n.9. Palmieri "adopts and endorses" amicus's briefs, Appellant's Br. 25; Appellant's Reply Br. 5, but does not expressly join the concession. No matter. We need not accept the concession to affirm dismissal of Counts 2, 20, and 22; we simply note it for its good sense.

their dismissal but for a different reason: they fail on the merits.[4]  *See Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015) ("Ordinarily, a court of appeals can affirm a district court judgment on any basis supported by the record, even if different from the grounds the district court cited.").

Count 1 runs headlong into 5 U.S.C. § 552a(e)(7), which permits the government to maintain a record involving First Amendment activity where, as here, it is "pertinent to and within the scope of an authorized law enforcement activity." *See Maydak v. United States*, 363 F.3d 512, 517 (D.C. Cir. 2004) ("Although the Privacy Act does not define 'law enforcement activity,' we have interpreted the phrase broadly" to include "an authorized criminal, intelligence, or administrative investigation." (citing *Nagel v. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.3 (D.C. Cir. 1984))). Count 8 similarly cannot withstand the force of statutory text: it erroneously mixes and matches criminal and civil portions of the Privacy Act.  It alleges that individual agents violated 5 U.S.C. § 552a(i)(3), which prescribes criminal punishment for "[a]ny person" who knowingly and willfully obtains certain records under false pretenses.  Count 8 then seeks redress for that violation under 5 U.S.C. § 552a(g)(1), which creates a cause of action only for "agency" violations.  Under the Privacy Act, an individual person is not an "agency."  5 U.S.C. § 552a(a)(1) (incorporating definition now appearing at 5 U.S.C. § 552(f)(1)).

---

[4]  Because the *Egan* holding does not speak to jurisdiction, *Oryszak*, 576 F.3d at 524-26, we can assume without deciding that it does not bar these counts.

**COUNTS 13 AND 19: DUE PROCESS CLAIMS UNDER *BIVENS***

Invoking *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Counts 13 and 19 raise due process claims against individual officials. Count 13 alleges that in May 2010, without due process, NCIS agents "orchestrated [Palmieri's] removal from" his job at the Bahrain naval base. Compl. 82. Count 19 alleges that in August 2011, without due process, Defense Department officers and employees "orchestrated [Palmieri's] removal from" the job he had on his return to the United States.[5] *Id*. at 100. The district court dismissed both counts, once again concluding that *Egan* bars them. And once again, we affirm their dismissal but for a different reason: the officials are entitled to qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotations omitted). When an official asserts qualified immunity, the plaintiff must "overcome" that assertion by demonstrating (*inter alia*) that the right "was clearly established at the time of" the alleged violation. *Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015). This is no easy feat. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate," not merely "at a high level of generality" but "in light of the specific context of the case." *Hedgpeth v. Rahim*, No. 16-7146, 2018 WL 3117808, at *2 (D.C. Cir. June 26, 2018) (quoting *White v. Pauly*, 137 S.

---

[5] Count 19 alleges a date of "August 2012," Compl. 100, but another part of the complaint makes clear that Palmieri lost his job in August 2011, *id*. at 30-31.

Ct. 548, 551-52 (2017) (per curiam), and *Scott v. Harris*, 550 U.S. 372, 377 (2007)).

We doubt Palmieri can make the required showing. But because neither he nor amicus even attempts to do so, we need not decide the matter. *See Fox*, 794 F.3d at 29. We held in *Fox* that a police officer was "entitled to qualified immunity because [the plaintiff's] opening brief fail[ed] to argue that her right not to be seized in [those] particular circumstances was clearly established, let alone identify what decisions of the Supreme Court or the courts of appeals clearly established that right." *Id*. (internal quotation omitted). We reasoned that the plaintiff thereby "forfeited" any attempt to stave off qualified immunity. *Id*. The same is true here: the opening briefs do not so much as mention qualified immunity, much less identify precedent putting the due process question "beyond debate" on the record facts.[6] *Hedgpeth*, 2018 WL 3117808, at *2 (internal quotation omitted).

## COUNT 21: CHALLENGES TO DOHA PROCEEDING

Count 21 alleges that, during the DOHA proceeding, the government violated due process and acted arbitrarily and capriciously in introducing Carpenter's letter and effectively

---

[6] The issue of qualified immunity first appears in the government's brief. In reply, amicus asks us—but only as to Count 12—"not to address" qualified immunity because the district court ruled on a different basis. Amicus Reply Br. 27-28. Even had amicus tailored this request to Counts 13 and 19, we would not entertain it. Amicus cites no law suggesting that dismissal on grounds other than qualified immunity relieves the plaintiff of his appellate burden under *Fox* where, as here, the defendants asserted qualified immunity in district court. Mem. in Support of Mot. to Dismiss, Dkt. No. 26 at 5, 17-20, 23-27 (Nov. 12, 2013).

denying Palmieri an opportunity to confront the Navy reservist. The district court dismissed the due process component of this claim on the ground that Palmieri has no liberty or property interest in a security clearance. The court granted summary judgment to the government on the APA component of the claim, concluding that "the administrative judge properly admitted the evidence" and "the DOHA appeal board thoughtfully reviewed and applied the governing authorities." *Palmieri*, 72 F. Supp. 3d at 209 (capitalization altered). In light of Palmieri's allegations that the government's actions have made it impossible for him to find work, *see, e.g.*, Compl. 36, 39, 64, 79, 107-08, we assume without deciding that he has a cognizable liberty interest, *see Gill v. DOJ*, 875 F.3d 677, 681 (D.C. Cir. 2017) (per curiam) (in some circumstances, plaintiff "may show that a liberty interest was violated by the revocation of a security clearance" (citing *Doe v. Cheney*, 885 F.2d 898, 909-10 (D.C. Cir. 1989))). We nevertheless agree with the district court that Palmieri has no viable claim.

We start with Palmieri's assertion of arbitrariness and caprice. He and amicus claim a violation of Executive Order 10865 and Directive 5220.6. Because of DOHA's familiarity with these laws and clearance issues more generally, *cf. Greenberg*, 983 F.2d at 290—and because of the APA's abuse-of-discretion standard, 5 U.S.C. § 706(2)(A)—we owe deference to the administrative judge and appeal board. We see no abuse in the admission of Carpenter's letter and the reservist's declarations therein.

Even assuming Palmieri was entitled to "an opportunity to cross-examine" the reservist, Amicus Br. 28 (quoting Exec. Order No. 10865 § 4 and Directive 5220.6, Encl. 3 ¶ E3.1.22), the administrative judge in fact gave Palmieri an opportunity to call the reservist as a witness. The judge asked Palmieri if he knew the reservist's whereabouts. Palmieri said he did. The

judge asked DOHA counsel if the government objected to the reservist testifying by telephone. Counsel did not object. The judge told Palmieri that, if he wanted the reservist to testify, and if he provided as much information about her as he could, the judge would "ask the Government . . . to make arrangements" for her to testify. JA 448-49. Palmieri did not say he lacked sufficient information to help make such arrangements. Instead, he flatly declined the opportunity to seek her testimony. *See, e.g.*, JA 445 ("She's not my witness. She's a Government witness. . . . She certainly wouldn't be on my side."). Having chosen that strategy, he is in no position to claim prejudicial error. 5 U.S.C. § 706; *see Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir. 1977) (union member suspected of misconduct received "full and fair hearing" despite absence of charging parties because he declined opportunity to call them); *cf. Reynolds v. United States*, 98 U.S. 145, 158 (1878) (even in criminal case, defendant "cannot insist on" confronting witnesses "if he voluntarily keeps [them] away").

Relatedly, neither Palmieri nor amicus advances any persuasive reason to second-guess the conclusions of the administrative judge, JA 186 & n.1, appeal board, JA 182-83, and district court, *Palmieri*, 72 F. Supp. 3d at 208-09, that Carpenter's letter was an admissible business record under Directive 5220.6, Encl. 3 ¶ E3.1.20 (providing that certain "[o]fficial records . . . compiled or created in the regular course of business . . . may be received and considered . . . without authenticating witnesses"). Amicus resists this conclusion based on Federal Rule of Evidence 803(6), suggesting it applies jot and tittle in a DOHA adjudication. Amicus Br. 23-27. Amicus is mistaken: in a DOHA adjudication, the Federal Rules of Evidence "serve as a guide" but "may be relaxed . . . to permit the development of a full and complete record."

Directive 5220.6, Encl. 3 ¶ E3.1.19; *see* JA 317 (administrative judge explained as much to Palmieri).

Having dispatched Palmieri's APA claim, we can "quickly resolve" his due process claim. *Gill*, 875 F.3d at 681. In *Gill*, we rejected the plaintiff's due process challenge to the revocation of his security clearance because he received "a full hearing . . . where he had the right to counsel and the opportunity to make his case." *Id.* So too in Palmieri's case. *See generally* JA 311-461. Because the administrative judge and DOHA appeal board reasonably applied Executive Order 10865 and Directive 5220.6, we have no cause to reach a different result here from the result in *Gill*.

## COUNTS 4, 6 AND 14: CLAIMS OF ILLEGAL SEARCH

Counts 4, 6 and 14 allege illegal searches in violation of the First and Fourth Amendments and the Foreign Intelligence Surveillance Act. Contrary to amicus's contentions, as adopted by Palmieri, the district court correctly dismissed these counts for failure to state a claim.

Regarding Count 4, amicus contends that the government "search[ed]" Palmieri's Facebook account. Amicus Br. 34. We disagree. The district court read Count 4 to allege that a third person "to whom Palmieri had given access to his Facebook page . . . used that access to obtain" information about him. *Palmieri*, 72 F. Supp. 3d at 209. An investigative report cited in Count 4 bolsters the court's reading. The report explains that the third person is one of Palmieri's Facebook friends and that she viewed his Facebook page using the access she had based on her status. JA 201. Obtaining from that person information Palmieri knowingly and voluntarily shared with his Facebook friends is not a search. *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily

turns over to third parties."); *United States v. Miller*, 425 U.S. 435, 443 (1976) (this is so "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed").[7]

Regarding Counts 6 and 14, which allege illegal searches of Palmieri's workspace and computers, we agree with the district court that they were reasonable searches "carried out for the purpose of obtaining 'evidence of suspected work-related employee misfeasance.'" *Palmieri*, 72 F. Supp. 3d at 212 (quoting *O'Connor v. Ortega*, 480 U.S. 709, 723 (1987) (plurality opinion)). Contrary to amicus's argument, Amicus Br. 41-43, the fact that the misfeasance may have been criminal does not make the searches any less reasonable, *see United States v. Simons*, 206 F.3d 392, 400 (4th Cir. 2000) (under *O'Connor*, government agency has "an interest in fully investigating [employee's] misconduct, even if the misconduct was criminal").

## COUNTS 5 AND 15: CLAIMS UNDER STORED COMMUNICATIONS ACT

Counts 5 and 15 allege that the defendants' search and seizure of Palmieri's "work computers" and "work emails" violated the Stored Communications Act. Compl. 59, 89. These counts, too, state no claim.[8] Under the Act, the

---

[7] We note that Count 4 does not allege "a detailed chronicl[ing] of [Palmieri's] physical presence compiled every day, every moment, over several years." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (distinguishing *Smith* and *Miller* on this basis).

[8] The district court dismissed Counts 5 and 15 for lack of jurisdiction, holding that the Stored Communications Act does not

government must obtain a warrant and follow prescribed procedures whenever it requires a service provider to "disclos[e]" certain stored electronic communications. 18 U.S.C. § 2703(a). As we read the complaint, the electronic communications at issue—to repeat, Palmieri's work emails on his work computers—belonged to the government. And as a matter of plain English, the government demanded no "disclosure" of its own records. *See* IV OXFORD ENGLISH DICTIONARY 738 (2d ed. 1989) (to "disclose" is to "open up to the knowledge of others"); *cf.* FED. R. CIV. P. 26(a)(1) ("[d]isclosure" involves providing information and documents to "other parties").

### COUNT 12: CLAIM OF UNLAWFUL INTERROGATION

Finally, invoking *Bivens*, Count 12 alleges that NCIS agents violated the Fifth Amendment when they "interrogated" Palmieri in Bahrain. Compl. 19-20, 78-81. The district court concluded that, on this count, Palmieri failed to establish personal jurisdiction of the defendants. We agree.

If the plaintiff seeks relief against a government official in his personal capacity, the district court must have personal

---

waive sovereign immunity for equitable claims like Palmieri's. The court overlooked the APA's waiver of sovereign immunity, 5 U.S.C. § 702, which "eliminate[s] the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity," *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984). We have held "that the APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (internal quotation omitted). Accordingly, we affirm the dismissal of Counts 5 and 15 under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1). *See id.* at 197 (affirming for failure to state claim after district court dismissed for lack of jurisdiction).

jurisdiction of that defendant. *Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002). And "for personal jurisdiction in the District Court for the District of Columbia to be proper," the defendant "must be covered by the District of Columbia's long-arm statute." *I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003). As relevant here, the long-arm statute covers a "tortious injury in the District of Columbia" caused "by an act or omission outside the District of Columbia" if the defendant engages in a "persistent course of conduct . . . in the District of Columbia." D.C. CODE § 13-423(a)(4).

Palmieri sues the agents in their personal capacity. Compl. 78. Yet the agents' only alleged conduct in the District was undertaken in their official capacity. *See Palmieri*, 72 F. Supp. 3d at 204 ("[T]he only specific contact that Palmieri identifies between the individual defendants and this District is their employment by a federal agency once headquartered in the District."). Without more, the agents' official connections to the District do not suffice. *See Ali*, 278 F.3d at 7 (district court lacked personal jurisdiction over Virginia prison officials acting in individual capacity because connections to District of Columbia were in official capacity).

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*

KATSAS, *Circuit Judge*, concurring: The Court's opinion ably dispatches the jumble of thirty claims in the 163-page, *pro se* complaint under review. As the Court explains, each of Palmieri's claims is either forfeited, frivolous, or otherwise without merit. The Court thus manages to avoid the overarching issue in this or any other case arising from the revocation of a security clearance—whether *Department of Navy v. Egan*, 484 U.S. 518 (1988), bars judicial review.

In particular, the Court avoids deciding whether *Egan* bars non-frivolous constitutional challenges to the denial or revocation of a security clearance. *Egan* itself barred challenges under the Administrative Procedure Act, but the Court's reasoning—that control over classified information is constitutionally committed to the President as Commander in Chief, *see id.* at 527—seems to encompass constitutional challenges as well as statutory ones. On the other hand, *Webster v. Doe*, 486 U.S. 592 (1988), held that precluding judicial review of constitutional challenges to executive action can itself raise constitutional concerns, even in the area of national security. *See id.* at 601–05. However, that case involved only the statutory authority of the Director of Central Intelligence, not the Article II authority of the President. *See id.* at 597. Likewise, *National Federation of Government Employees v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), held that *Egan* does not bar constitutional challenges to the methods used by the Executive Branch to gather information for making clearance decisions; but *Greenberg* did not involve a plaintiff seeking to undo the actual denial or revocation of a clearance, or even a challenge to adjudicatory as opposed to investigatory processes. *See id.* at 287–90.

The question whether a plaintiff can seek to undo the denial or revocation of a security clearance, based on non-frivolous constitutional challenges to investigatory or even adjudicatory processes, is weighty and difficult because, in such cases, judicial review bumps up against the President's

enumerated and exclusive power as Commander in Chief.  We recently reserved that question, *see Gill v. U.S. Dep't of Justice*, 875 F.3d 677, 682 (D.C. Cir. 2017), as has the Ninth Circuit, *see Dorfmont v. Brown*, 913 F.2d 1399, 1403–04 (9th Cir. 1990).  At some point, we will likely need to decide it, for the government warns us that individuals denied clearances are increasingly invoking cases like *Webster v. Doe* and *Greenberg* to chip away at *Egan*.

This case squarely presents the question, for Palmieri *does* ask the Court to undo the revocation of his security clearance, and some of his claims challenge the constitutionality of *adjudicatory* as opposed to investigatory processes.  The government understandably wants some answers, in light of the ongoing tension in the relevant precedents.  Nonetheless, prudence seems to counsel restraint in this case, given the *pro se* representation and the sprawling, unfocused nature of the complaint.  Because Palmieri's claims can be rejected on non-*Egan* grounds, and because the Court's opinion leaves open the possibility that *Egan* might bar some or all of them, I join the opinion in its entirety.